383 Mass. 791                                      791

Chief Administrative Justice of the Trial Court *v.* Service Employees Int'l Union.

CHIEF ADMINISTRATIVE JUSTICE OF THE TRIAL COURT *vs.*
SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 254, AFL-CIO, CLC.

Suffolk. April 8, 1981. — June 26, 1981.

Present: BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Arbitration,* Arbitrable question. *Contract,* Collective bargaining contract.

Whether a probation officer was entitled to "allied service credit" was an arbitrable question under the provisions of a collective bargaining agreement even though the issue was not directly covered by the agreement, which had taken effect after the practice of granting such credit had been discontinued, and even though the agreement contained an "integration" or "zipper" clause, where the employee had been hired while the former practice was in effect and the question in dispute, which determined his rate of compensation under the agreement, required reference to the former practice in order that the agreement have meaningful application. [792-794]

CIVIL ACTION commenced in the Superior Court Department on June 23, 1980.

The case was heard by *Ford,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Paul T. Edgar* for the plaintiff.

*Christopher J. Muse* for the defendant.

BRAUCHER, J. The plaintiff as employer sued to vacate an arbitrator's award under a collective bargaining agreement, and the defendant union counterclaimed to confirm the award. See G. L. c. 150C, §§ 10, 11. The arbitrator awarded "allied service credit" to Anthony M. Iacozza, a probation officer, and the Superior Court confirmed the

award. The employer appealed, and we transferred the case here on our own motion. We affirm the judgment of the Superior Court.

The facts found by the arbitrator are not in dispute. Iacozza, the grievant, was appointed on May 12, 1978, as a temporary probation officer for the Superior Court in Bristol and Barnstable counties. He had worked as a counselor for the Boston Youth Activities Commission, and at least two court officials had discussed with him "allied service credit" for that work. See G. L. c. 276, §§ 83, 99B (3), authorizing such credit. Under the Court Reorganization Act, effective July 1, 1978, the appointment became subject to review by the plaintiff. G. L. c. 211B, §§ 8, 9, inserted by St. 1978, c. 478, § 110. G. L. c. 276, § 83, as amended by St. 1978, c. 478, § 290. The grievant was appointed a temporary probation officer on November 28, 1978, with a retroactive hiring date of July 24, 1978. On June 28, 1979, he was recommended for permanent appointment as a probation officer for Bristol County, and on November 26, 1979, the plaintiff approved the permanent appointment but denied the grievant's request for allied service credit. Meanwhile, on August 21, 1979, the plaintiff and the defendant entered into a collective bargaining agreement for the period from July 1, 1978, to June 30, 1981. Before July 1, 1978, it had been the practice for the Superior Court committee on personnel to grant such credit at its discretion, but the practice ended on June 30, 1978.

The arbitrator ruled as a threshold matter that the grievance dealt with compensation rather than appointment and was therefore arbitrable. On the merits, he found that a practice of giving credit for allied service existed before July 1, 1978, sufficient to ensure that the grievant would have received such credit if the plaintiff had not terminated the practice. The practice was clearly stated and understood, maintained over a reasonable time, and accepted by both parties, and it could not be terminated unilaterally. There had been no negotiations about the practice. Hence

383 Mass. 791                                                    793

Chief Administrative Justice of the Trial Court *v.* Service Employees Int'l Union.

the plaintiff had violated the collective bargaining agreement, and the grievant should receive allied service credit as of July 25, 1978, placing him on Step 3 of Job Group 1 instead of Step 1.

The collective bargaining agreement, art. V, § 5.01, defines a "grievance" as "a written dispute concerning the application or interpretation of the terms of this agreement." Article V, § 5.04, provides for arbitration of grievances, and adds, "The arbitrator shall have no power to add to, subtract from, or modify any provision of this Agreement or to issue any decision or award inconsistent with applicable law or which interfers [sic] in any way with normal operations of the courts." Article XXVI, §§ 26.01-26.03, under the caption "Entire Agreement," is an "integration" or "zipper" clause, and is set forth in the margin.[1]

Under art. XVI, "Management Rights," § 16.01, appointment of personnel is a right "vested exclusively in the Employer." Compensation of probation officers, however, is governed by art. X, § 10.01, and by Schedule A, setting

---

[1] "Article XXVI. *Entire Agreement. Section 26.01.* This Agreement, upon ratification, constitutes the complete and entire Agreement between the parties and concludes collective bargaining for its term. No amendment to this Agreement shall be effective unless in writing, ratified, and executed by the parties.

"*Section 26.02.* The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the areas of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Employer and the Union, for the duration of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to: A. Any subjects or matters referred to or covered in this Agreement, or B. Any subjects or matters not referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

"*Section 26.03.* The provisions of this Article may be waived by written mutual agreement of the parties."

forth in tabular form specific annual rates of pay for seven or more steps in each of four "job groups" in each of the three fiscal years covered by the agreement. Under G. L. c. 276, § 99B (1), probation officers are in job group 1; § 10.01A of the agreement refers to "the step rate in which" employees "were classified on June 30, 1979," and § 10.01D refers to probation officers "hired on and after July 1, 1978 in Step 1." But the grievant was not classified to any step on June 30, 1979, and the very question in dispute is whether he should be hired in Step 1. Reference to some standard or practice outside the agreement seems essential if the agreement is to have meaningful application, and reference to previous practice is an orthodox source of meaning. Thus we have no doubt that the dispute is a "grievance" subject to arbitration under the agreement. The arbitrator was asked to interpret and apply the agreement, not to add to it, subtract from it, or modify it. See *Cape Cod Gas Co.* v. *United Steelworkers Local 13507,* 3 Mass. App. Ct. 258, 261-265 (1975), and cases cited. Cf. *Torrington* v. *Metal Prods. Workers Local 1645,* 362 F.2d 677, 681-682 (2d Cir. 1966).

Once it is decided that a matter is arbitrable, we do not decide the merits. See *School Comm. of Southbridge* v. *Brown,* 375 Mass. 502, 504 (1978), and cases cited. The arbitrator's opinion here manifests fidelity to his obligations; he did not "dispense his own brand of industrial justice." His award "draws its essence from the collective bargaining agreement." See *United Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960); *Morceau* v. *Gould Nat'l Batteries, Inc.,* 344 Mass. 120, 124-125 (1962). Our conclusion is not affected by the "zipper" clause, art. XXVI. That clause does not prevent interpretation and application of the agreement in accordance with past practice. *Shippensburg Area Educ. Ass'n* v. *Shippensburg Area School Dist.,* 42 Pa. Commw. Ct. 128, 133-134 (1979). See Gilman, Past Practice in the Administration of Collective Bargaining Agreements in Arbitration, 4 Suffolk U.L. Rev. 689, 705 n.61 (1970); Restatement (Second) of Contracts

§ 242, Comment *e* (Tent. Drafts Nos. 1-7 [1973]).[2] We need not now consider the effect of the clause on claims of obligations not referred to in the agreement, as in *County of Allegheny* v. *Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 38-39 (1977).

*Judgment affirmed.*

---

[2] Section 242 of the Restatement is to be renumbered § 216 when Restatement (Second) of Contracts is published, probably in 1981.