SCHOOL COMMITTEE OF EAST BROOKFIELD *vs.* LABOR
RELATIONS COMMISSION.

Worcester. December 17, 1982. — May 19, 1983.

Present: PERRETTA, ROSE, & DREBEN, JJ.

*School and School Committee,* Termination of employment, Collective
bargaining.  *Labor,* Unfair labor practice, Discharge, Damages.
*Damages,* Wrongful discharge of employee.  *Labor Relations Com-
mission.*

There was substantial evidence to support a decision of the Labor Rela-
tions Commission that a noncertified art instructor was discharged in
violation of G. L. c. 150E, § 10(*a*), because she filed a grievance
rather than, as claimed by the school committee, because of a policy
decision no longer to employ noncertified teaching personnel. [51-53]
There was no merit to a claim by a school committee that reversal of a
decision by the Labor Relations Commission that a noncertified art in-
structor had been unlawfully discharged was required because a copy
of an arbitrator's decision concluding that the instructor was a profes-
sional employee had been furnished to the commission. [53-54]
A decision of the Labor Relations Commission ordering reinstatement
of a noncertified art instructor who had been unlawfully discharged
did not violate G. L. c. 71, § 38G, where the decision ordered
reinstatement of the instructor to her "former position," which had
been described by the superintendent of schools and the school com-
mittee as "aide" and "instructor."  [55]
Where the Labor Relations Commission ordered that an instructor who
had been wrongfully discharged by a school committee be awarded
damages "for all monetary losses suffered by her," but offered no
guidance as to how the "monetary losses" were to be determined, and
where the commission did not appear to have considered factors
mitigating damages, this court ordered the case to be remanded to the
commission for a determination of the instructor's damages. [56]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 27, 1980.

The case was heard by *Rutledge,* J.

*Diane M. Drapeau* for the defendant.

*James F. Cosgrove* for the plaintiff.

PERRETTA, J.  On the appeal of the East Brookfield school committee (school committee) under G. L. c. 30A, § 14, the trial judge concluded: (1) that there was not substantial evidence to support the decision of the Labor Relations Commission (commission) that the school committee would not have discharged a member of its teaching staff were it not for the fact that she had filed a grievance to attempt to adjust her salary; and (2) that the commission exceeded its authority in ordering the school committee to reinstate the employee, a noncertified teacher, to her former position. We reverse the judgment.

1.  *The Facts.*

According to documents and testimony presented at hearings before the commission, the superintendent of schools, prior to the beginning of the 1971-1972 school year, advertised for a teacher certified in art, but he received no response.  Carol Nason had applied for a position as a teacher's aide but upon learning of her background, the superintendent told her about the opening for an art teacher.  Although Nason did not have a college degree, she had a high-school diploma, had taken a ten-month course at the Worcester Art Museum following her graduation from high school, had held a series of art-related jobs in industry for about ten years, and had served as a substitute teacher in East Brookfield for a one-month period.

Because Nason was not certified to teach by the Board of Education (board) and because the school committee never requested the board to waive the certification requirement, Nason was not eligible for employment as a teacher,[1] and

---

[1] General Laws c. 71, § 38G, as appearing in St. 1973, c. 847, § 5, provides in part: "No person shall be eligible for employment by a school committee . . . unless [she] has been granted by the board a certificate with respect to the type of position for which [she] seeks employment; . . . provided . . . that a school committee may upon its request be exempt by the board for any one school year from the requirement in this section to

the school committee did not hire her as such. Instead, she was hired as an art instructor to engage in "art activity as distinguished from teaching art." Nason worked part time on a year to year basis, and she was paid a pro-rata share of the then prevailing salary for a noncertified teacher.[2] At the start of the 1976-1977 school year, Nason asked her principal how she might obtain a raise, and he suggested that she speak with someone from the East Brookfield Teachers' Association (association).

Under a collective bargaining agreement then in effect between the association and the school committee, the association was recognized as "the exclusive bargaining agent and representative of all professional employees," as such employees are defined in G. L. c. 150E, § 1, inserted by St. 1973, c. 1078, § 2. As applied to educators, § 1 does not define a professional employee in terms of either a bachelor's degree or board certification,[3] whereas G. L. c. 71, § 38G, second par., requires an applicant for certification to hold a bachelor's degree.[4] The bargaining

employ certified personnel when compliance therewith would in the opinion of the board constitute a great hardship in securing teachers for the schools of a town."

[2] It does not appear that there was a formal noncertified teachers' salary schedule in effect; rather, the evidence shows that Nason was paid on the same basis as another noncertified teacher.

[3] In G. L. c. 150E, § 1, a "professional employee" is defined as "any employee engaged in work (*i*) predominately intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work, (*ii*) involving the consistent exercise of discretion and judgment in its performance, (*iii*) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time, and (*iv*) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual or physical processes."

[4] An applicant "for a provisional or a permanent certificate" must furnish the board "with satisfactory proof" that he or she, among other qualifications, "possesses a bachelor's degree or an earned higher academic degree or is a graduate of a four-year normal school approved by the board."

agreement established a pay scale, but only for those persons holding, at a minimum, a bachelor's degree and who were thus certified or certifiable under § 38G.

Nason brought her salary concern to the association, and on December 1, 1976, a grievance on her behalf was filed, reciting that she was a professional employee and, therefore, a member of the bargaining unit and that the school committee was denying her benefits guaranteed under the bargaining agreement. She sought recognition as a professional employee and compensation for her alleged monetary loss. However, the dispute could not be resolved by either the superintendent of schools or the school committee, and Nason demanded arbitration.

2. *The Arbitration Proceedings.*

The issues put to the arbitrator were: (1) whether Nason was "a protected member of the collective bargaining contract unit"; and (2) if she was a member, had she been paid the proper salary for the 1976-1977 academic year.

The arbitrator concluded that Nason was a "professional employee" (see note 3, *supra*) and, hence, a member of the bargaining unit.[5] He also concluded that Nason was not entitled to a salary based on the schedule set out in the bargaining agreement for the reasons that she did not have a bachelor's degree, that her salary had never been set on the

---

[5] The arbitrator found that the fourth part of the definition of "professional employee" would be the only factor where "there might conceivably be some dispute." However, that component of the definition was resolved in Nason's favor on the following reasoning. "It is true that she did not ever have a [b]achelor's degree, but the definition does not specifically require a degree. What it does require is ' . . . knowledge of an advanced type in a field of . . . learning *customarily* acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning . . .' [emphasis added by arbitrator]. Clearly, use of the term 'customarily' contemplates flexibility of application rather than any hard and fast rule. I conclude that Carol Nason does possess 'knowledge of an advanced type' and that in fact she acquired it through a combination of specialized study and experience . . . . Her knowledge was not acquired through a general academic education, nor could it have been so acquired. Neither was her knowledge acquired from an apprenticeship, or from training in the performance of routine mental, manual or physical processes."

basis of the bargaining agreement, that it had been arrived at on the basis of prior dealings, and that for the year in question it had been correctly computed.[6]

3. *The Commission Proceedings.*

To the school committee's credit, it makes no serious contention that Nason failed to make a prima facie showing that unlawful considerations motivated the school committee to fire her. See *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 561-562 (1981); *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 386 Mass. 414, 418-419 (1982).

The superintendent of schools responded to Nason's grievance by stating that "it would be unfortunate if the . . . [a]ssociation persist in this matter as it may place the [s]chool [c]ommittee in a position whereby they might need to conclude Ms. Nason's employment and opt for a certified art teacher." It was the school committee's position that Nason was not a professional employee, that if she would withdraw her grievance and "sit down with the Committee and try to discuss what seemed to be her problem, and that is salary — something like that could have been solved," but that if she chose to pursue her grievance, the school committee would have no choice but to fire her. When Nason indicated that she intended to go forward, the school committee voted to discharge her.

The school committee argued, however, that it did not fire Nason because she filed a grievance; rather, she was discharged because of a policy decision no longer to employ noncertified teaching personnel.

It then fell to Nason to "prove by a preponderance of evidence that the asserted lawful reason was not the real reason for the discharge." *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass at 566. This she did by

---

[6] The record does not disclose whether the school committee or the association sought action on the arbitrator's award under G. L. c. 150C, §§ 10, 11 or 12.

showing: (1) that the school committee was always aware of, but unconcerned with, her lack of certification until she filed her grievance; (2) that another grievant seeking recognition of her membership in the bargaining unit withdrew her grievance when the school committee indicated that a refusal to do so might result in her discharge and that grievant was not discharged; (3) that if Nason had withdrawn her grievance, the school committee would have been willing to negotiate with her individually and would probably have worked out with her a satisfactory salary adjustment; and (4) that when Nason refused to withdraw her grievance, the school committee immediately voted to discharge her.

In deciding the instant case, the commission did not have the benefit of *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. at 571, or *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 386 Mass. at 419. However, it nonetheless applied a standard consistent with the principles therein discussed. The commission concluded that the school committee would have continued to employ Nason in spite of the stated lawful reason for her discharge "*were it not* for the fact that she filed a grievance to attempt to adjust her salary" (emphasis supplied).

4. *Substantial Evidence of Unlawful Discharge.*

The school committee's contention before the trial judge on its complaint under G. L. c. 30A, § 14, was that the bargaining unit of "professional employees" was limited to teachers holding bachelor's degrees, as demonstrated by the salary schedule in the bargaining agreement. Moreover, the association had never before taken the position that non-certified teaching personnel were members of the bargaining unit. Because the association and Nason refused to withdraw the demand that she be recognized as a professional employee entitled to the bargaining agreement rate of pay, the argument continues, the school committee was forced to elect one of three courses of action: (1) it could voluntarily accede to the demand of the association and

Nason and pay her the salary payable to certified teachers; (2) it could proceed to arbitration, run the risk of losing on its contentions with no right of review, see *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788, 792-793 (1977), and cases therein cited, and be required to pay Nason in the same unacceptable manner afforded under the first option; or (3) it could adopt a policy of no longer employing noncertified teaching personnel. The third choice was selected because, as put by the school committee in its brief: "This course of action would also have the ultimate effect of upgrading the school system, avoiding any confrontation with the Department of Education should it ever be alleged East Brookfield was using noncertified personnel to perform teaching assignments, and avoiding any further disagreement with the [association] over whether noncertified instructional personnel are or are not members of the teaching unit covered by the contract."

The trial judge reversed the commission's decision on the basis that a "careful review of the entire record in the case at bar discloses that the [c]ommission has rejected the [c]ommittee's evidence essentially in toto, though much of it was uncontested by the complainant and much of it was in fact corroborated by the complainant's own evidence, without an explicit and objectively adequate reason."

We agree that the school committee's uncontradicted evidence in support of its contention was totally rejected by the commission. It does not follow, however, that the commission's decision was not supported by substantial evidence within the meaning of G. L. c. 30A, § 1(6). "[T]he requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requir-

ing expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp.* v. *National Labor Relations Bd.,* 340 U.S. 474, 488 (1951). See also *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.,* 386 Mass. at 420.

On the evidence before it, the commission could and expressly did find that the school committee fired Nason "to avoid possibly inconvenient or expensive arbitration awards." We think that the school committee all but concedes this point, albeit unwittingly, by the very nature of its argument. That it perceived its action as having been forced by the position taken by the association and Nason does not transform the unlawful discharge, see G. L. c. 150E, § 10(*a*)(1) & (3),[7] into a legitimate business decision. The commission rejected the school committee's uncontradicted evidence because it refused to accept the school committee's "limited view of how the situation might have been handled." As noted by the commission in its decision, "it would have been possible for the [s]chool [c]ommittee to recognize Nason as part of the teachers' bargaining unit, . . . insist that she was not covered by the scale set forth in the contract" and the "[a]ssociation and the [school committee] could then have attempted to reach agreement on a salary schedule for noncertified teachers." There was substantial evidence to show that "Nason's discharge was triggered by the filing of a grievance, and could have been avoided by the withdrawal of that grievance."

The school committee next argues that reversal of the commission's decision is required because of an error of law.

---

[7] General Laws c. 150E, § 10(*a*)(1) & (3), inserted by St. 1973, c. 1078, § 2, provides: "(*a*) it shall be a prohibited practice for a public employer or its designated representative to: (1) [i]nterfere, restrain or coerce any employee in the exercise of any right guaranteed under this chapter; . . . (3) [d]iscriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization."

At the close of the evidence before it, the commission indicated that it would await receipt of the arbitrator's award. The school committee stated that if the decision were unfavorable, it would object to any use of it by the commission. When the arbitrator issued his award, a copy of his decision was furnished to the commission. In its decision the commission noted that the arbitrator had concluded that Nason was a professional employee but that "the arbitrator's decision is not relevant to the issues before us."

The school committee argues that the commission has exclusive jurisdiction to determine appropriate bargaining units, see G. L. c. 150E, § 3, and that it was error to defer to the arbitrator on this point. Deciding whether a specific employee is a member of a well defined and established bargaining unit hardly infringes on the commission's exclusive responsibility to determine "appropriate bargaining units which shall be consistent with the purposes of providing for stable and continuing labor relations." G. L. c. 150E, § 3, inserted by St. 1973, c. 1078, § 2. See, e.g., *Local 1111, Intl. Assn. of Fire Fighters* v. *Labor Relations Commn.,* 14 Mass. App. Ct. 236 (1982).

Moreover, even if the commission did in fact defer to the arbitrator's determination that Nason was a professional employee and even if such deference were improper, but see Gorman, Basic Text on Labor Law; Unionization and Collective Bargaining 751-755 (1976), that act would be of no consequence. The commission correctly argues in its brief that, regardless of whether Nason was a professional employee, she was nonetheless an employee of the school committee, see G. L. c. 150E, § 1, defining "public employee" and "public employer," and as such she had the right to seek without retaliation the association's aid in resolving her salary dispute. G. L. c. 150E, § 2. The association, regarding her as a member of the bargaining unit even if not a member of the association, had the right to utilize on her behalf the arbitration procedure that the school committee had agreed to in its bargaining agreement.

### 5. *Nason's Reinstatement.*

The trial judge further concluded that the commission had "exceeded its jurisdiction and committed an error of law in ordering the [c]ommittee to reinstate or employ the complainant in a teaching position in violation of G. L. c. 71, § 38G." The fact of the matter is, however, that the commission did not order Nason reinstated to a teaching position; it ordered her reinstated to her "former position," which the superintendent of schools and the school committee had described as "aide" and "instructor." Reinstatement of Nason to her former position violates no law. See G. L. c. 71, § 38, as amended by St. 1970, c. 780 ("[A school committee] may also hire instructional or administrative aides for assignments in laboratories and classrooms. An 'instructional aide,' as used in this section, shall be a person who is employed on subprofessional teaching duties . . . under the direction of a teacher . . .").

The commission also ordered that the school committee make Nason "whole for all monetary losses suffered by her from the date of her termination to the date of the offer of reinstatement," with interest thereon. The commission, however, offered no guidance in its decision or order as to how Nason's "monetary losses" are to be determined. Nason's salary was not, and should not be, computed in accordance with what the school committee has paid its certified teachers. Cf. *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 802 (1980). Nor does it appear from the order that the commission considered factors mitigating Nason's damages. Moreover, the evidence shows that Nason's salary was established annually and that the pattern of increases was an irregular one. In these circumstances, we think it appropriate that, in fashioning this aspect of the remedy provided to Nason, the commission establish a more definite or specific order. See Gorman, *supra* at 138-139. Cf. *National Labor Relations Bd.* v. *Mooney Aircraft, Inc.*, 375 F.2d 402 (5th Cir.), cert. denied, 389 U.S. 859 (1967).

6. *Delay by the Commission.*

The school committee argues that the commission's delay (approximately two years) in reaching its decision warrants its reversal. The commission counters simply that the argument is without merit. See *National Labor Relations Bd.* v. *Katz,* 369 U.S. 736, 748 n.16 (1962). But see *National Labor Relations Bd.* v. *Staub Cleaners, Inc.,* 418 F.2d 1086, 1089-1090 (2d Cir. 1969).

The delay is cause for concern, as it may increase the ultimate size of the award that the town will have to pay Nason. We cannot say, however, that the commission abused its "considerable discretion . . . in fashioning an appropriate remedy." *School Comm. of Newton* v. *Labor Relations Commn.,* 388 Mass. 557, 580 (1983).

7. *Disposition.*

The judgment is reversed, and the case is remanded to the Superior Court for entry of a new judgment which: (1) vacates that part of paragraph 2 of the commission's order which deals with damages and remands the matter to the commission for the determination of Nason's monetary losses, if any (on which the interest provided for in the second sentence of paragraph 2 is to be computed); and (2) affirms the remaining provisions of the commission's order.

*So ordered.*