GROBET FILE COMPANY OF AMERICA, INC. *vs.* RTC
SYSTEMS, INC.

No. 87-918.

Suffolk.    April 11, 1988. — June 23, 1988.

Present: BROWN, CUTTER, & KASS, JJ.

*Arbitration,* Authority of arbitrator, Judicial review, Damages. *Contract,*
Construction of contract, Damages. *Damages,* Breach of contract.

An arbitrator did not exceed his powers within the meaning of G. L. c. 251,
§ 12, by assessing damages against a computer software company for
failing to provide modifications to standard software programs as agreed
to under a license agreement with the company to which the programs
were leased, where it was highly doubtful that the imprecisely drafted
language relied upon by the software company in the agreement, under
the caption "Warranty of Right to Grant License," limiting "damage
. . . arising . . . in connection with this Agreement," had anything to
do with the provisions concerning program modifications, which were
separate from the standard licensing provisions of the agreement. [134-
136]

CIVIL ACTION commenced in the Superior Court Department
on February 23, 1987.

The case was heard by *John J. Irwin, Jr.,* J.

*Thomas I. Elkind (Brian G. Leary* with him) for the defend-
ant.

*Edward R. Schwartz (M. Lawrence Oliverio* with him) for
the plaintiff.

KASS, J.  RTC Systems, Inc., protests that an arbitrator's
award assessed damages against it which were expressly pre-
cluded by the terms of the governing contract. Consequently,
RTC urges, the award was in excess of the arbitrator's authority
and was erroneously confirmed by a Superior Court judge. See
G. L. c. 251, §§ 11 and 12. We conclude that the contract
language is susceptible to the interpretation placed upon it by
the arbitrator and affirm the judgment of the court.

This, in outline, is the commercial setting of the dispute. Sometime in 1984, Grobet File Company of America, Inc., a manufacturer of precision hand tools and something of a pioneer in the use of computer technology,[1] decided to replace its outdated computer system. Grobet adopted a plan of buying new IBM hardware which would run standard "vanilla" programs devised and marketed by RTC. There would be twelve programs which RTC would furnish under a license agreement, covering functions such as general ledger and strategic planning, accounts payable, accounts receivable, purchasing, order processing, sales analysis, payroll, human resources, and so forth. For Grobet's purposes, the vanilla programs required tailor-made modifications ("toppings" and "mix-ins"). The price tag negotiated for the installation was $660,476.60, of which $441,776.60 was allocable to new hardware, $150,000 for the vanilla software, and $68,700 for the software modifications. Terms to this effect were incorporated in an agreement which the parties signed on November 30, 1984. That agreement also provided that RTC was to complete the project "no later than May 31, 1985."

It is not necessary to chronicle in detail the history of missed goals and failed performance which followed. By the end of March, 1986, the modifications were still substantially incomplete. RTC had much reduced its own work force and it had placed the module modifications "temporarily on hold." Grobet demanded arbitration in which it asked, among other things, for "rescission"[2] and compensatory damages. The parties proceeded to arbitration before a single arbitrator who awarded Grobet $87,588.17.

Under the agreement of November 30, 1984, the parties agreed to refer to arbitration "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof." In making his award, the arbitrator listed four components of dam-

---

[1] Grobet's existing system recorded and computed accounts payable and receivable, inventory control, payroll, and floor planning.

[2] Use of the term "rescission" seems a misnomer as there does not appear to have been any intent on Grobet's part to give back the hardware or the vanilla software.

ages: the cost of hiring another computer software engineer who successfully designed the modifications to the vanilla software, $30,522; costs incurred in running Grobet's old computer system, $56,589; depreciation of Grobet's old IBM 4331 system, which the parties intended to sell at the completion of the contract, during the period the new system was not up and running, $10,000; and late charge penalty per a February 24, 1986, amendment of the basic agreement, $10,000.[3]

RTC pitches its argument that the damage award exceeded the scope of the arbitrator's authority on the following language in the contract:

> "Except as provided under the Copyright/Patent section, RTC shall not be liable for any loss, cost, damage, or expense arising directly or indirectly in connection with this Agreement, in excess of the amount of the License Fee paid by Customer to RTC. In no event shall RTC be liable for any special or consequential damages or for any indirect damages such as punitive damages even if RTC has been notified of the possibility of such damages."

Apart from the penalty (a $10,000 amount) provided for by the superseding amendment of February 24, 1986, the remaining elements of damage were — at least the parties have put the case on that assumption — consequential in nature.

As to the underlying principle of law, RTC is on firm ground, i.e., an arbitrator may not award relief which goes beyond the clearly marked boundaries of the contract. *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980). Had the contract, for example, limited damages payable for any combination of defaults to $50,000, then the arbitrator could not award $100,000, even though the aggrieved party may have suffered damages in that amount. Otherwise formulated, the arbitrator may not ignore

---

[3] We have rounded off the amounts to the whole dollar. The total is $107,111. From that figure the arbitrator deducted $19,523 which, he had decided, Grobet owed RTC for hardware, basic software, and some implementation support; thus he arrived at the net award of $87,588.

the plain words of the contract. *United Paperworkers Intl. Union* v. *Misco, Inc.*, 484 U.S. 29, 40-41 (1987). We think the limiting boundaries, however, must be set forth with clarity, and the limiting words must be plain. If there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes.

Once in the arena of arbitration, the powers of the arbitrator concerning the issue are wide and the scope of judicial review of the arbitration proceedings is narrow. Short of fraud, arbitrary conduct, or significant procedural irregularity, the arbitrator's resolution of matters of fact or law is binding. *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 563 (1972). *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390-391 (1973). Courts will not disturb the arbitrator's findings and conclusions even if (in the court's view) they are grossly erroneous. *Ibid. Lawrence* v. *Falzarano*, 380 Mass. at 28-29. *Bernard* v. *Hemisphere Hotel Mgmt., Inc.*, 16 Mass. App. Ct. 261, 263-264 (1983). See also other statutory grounds for vacating an arbitration award contained in G. L. c. 251, § 12.

In the instant case the boundaries established by the language upon which RTC relies are not distinct; the words, in the context of the entire agreement, are not plain. It was, therefore, altogether within the arbitrator's authority to construe the agreement. What is wrong with RTC's position is that it rips the purportedly limiting language from context. The agreement consists of a form of license agreement devised by RTC for leasing basic vanilla software. Appended to the form pages are eleven specially drafted pages which deal mostly with the software modifications RTC was to design, although the addenda touch on ancillary subjects, such as trade-in of Grobet's existing computer equipment.

The limiting language which RTC embraces appears in the canned portion of the agreement under a caption "Warranty of Right to Grant License." That language is imprecisely drafted. It may relate solely to damages arising out of a breach by RTC of its warranty of a right to grant the various software

licenses. Although the clause in question purports to limit "damage . . . arising . . . in connection with this Agreement," the placement of the language under a particular subject heading admits of the interpretation that a shorter reach was intended than all damages under the entire agreement. Ambiguities tilt against the author. *Merrimack Valley Natl. Bank* v. *Baird*, 372 Mass. 721, 724 (1977). *Republic Pipe & Supply Corp.* v. *Marnell Constr. Corp.*, 5 Mass. App. Ct. 848 (1977). Even if the limiting language were thought to go beyond the warranty against encumbrances, it is highly doubtful that the limiting language had anything to do with the provisions concerning program modifications, which were separate from the standard licensing provisions. The damages awarded all relate to RTC's failures (as found by the arbitrator) to provide working modifications to the vanilla software.

In view of the absence of much more certain limitations on damages, the arbitrator acted within his powers in arriving at his decision. The award was rightly confirmed by the Superior Court judge.

*Judgment affirmed.*