## CITY OF PEABODY *vs.* PEABODY POLICE BENEVOLENT ASSOCIATION.

No. 91-P-735.

Essex. December 7, 1992. - February 4, 1993.

Present: BROWN, JACOBS, & PORADA, JJ

*Labor*, Arbitration, Collective bargaining. *Police*, Collective bargaining. *Arbitration*, Authority of arbitrator, Collective bargaining, Confirmation of award, Judicial review.

In a labor arbitration concerning the duration of the lunch period to be allowed municipal police officers assigned to work the day shift on Sundays, the arbitrator acted appropriately in interpreting ambiguous language in the officers' collective bargaining agreement in light of past departmental practice, and his award reinstating a one-hour lunch period was correctly confirmed by a judge of the Superior Court. [116-118]

CIVIL ACTION commenced in the Superior Court Department on February 26, 1990.

The case was heard by *John T. Ronan*, J.

*Daniel B. Kulak*, Assistant City Solicitor, for the plaintiff.

*Robert L. Wise* for the defendant.

BROWN, J. In this labor arbitration case, the city of Peabody (city) appeals from a judgment confirming an American Arbitration Association award for the Peabody Police Benevolent Association (association). As nothing has been made to appear that would cause us to depart from the settled principle that, "[a]bsent fraud, errors of law or fact are not sufficient grounds to set aside an award" (*Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 [1990]), we affirm.[1]

---

[1]"Even a grossly erroneous decision is binding in the absence of fraud." *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390 (1973).

We summarize the pertinent facts, which are undisputed. The association represents "all employees of [Peabody's] Police Department who hold the rank of patrolman, sergeant, lieutenant, and captain." In 1972, the city and the association agreed that all officers working the Sunday day shift should have a one-hour lunch period. In 1982, the association negotiated a new collective bargaining agreement. Article XIX, § 1, of that agreement provided in relevant part that:

> "Present policy and practice as to employees having lunch and dinner and taking reliefs shall continue in force and effect, subject to the following:
>
> "(a) Effective November 21, 1982, employees working days, and on the Police Department payroll as of said date, shall work an additional one-half (½) hour per day, and shall be paid overtime therefor, and take a one-half (½) hour lunch period as follows:
>
> . . .
>
> "(ii) Each such employee shall receive a one-half (½) hour lunch period between the hours of 12 noon and 1:30 P.M."

Notwithstanding the contract language, the officers who worked the Sunday day shift continued to enjoy a one-hour Sunday lunch until 1988 when the city and the police chief discontinued the practice. The association then filed a grievance,[2] claiming that its employees were entitled to a one-hour lunch period on Sundays.[3]

Based on the agreement's preservation of past practice and the police department's long standing one-hour Sunday lunch practice, an American Arbitration Association arbitrator to whom the grievance was submitted concluded that the "par-

---

[2] The parties' agreements prescribed a four-step grievance process culminating in binding arbitration at which arbitrators could neither "alter, amend, add to or subtract from the express [agreement] provisions."

[3] The grievance concerned the then-applicable agreement, executed in 1986. The 1982 agreement does not appear in the record, but the arbitrator noted that the pertinent language has existed in the agreements since 1982.

ties intended the day shift's one-hour Sunday lunch to be a practice that would continue with the one-half hour lunch period applying to Monday through Saturday." He therefore ruled that discontinuing one-hour Sunday lunches violated the collective bargaining agreement and ordered the city to restore the one-hour Sunday lunches and grant officers denied those lunches compensatory time off. The city petitioned the Superior Court to vacate the award pursuant to G. L. c. 150C, § 11(a)(3)[4]; the association counterclaimed to confirm. Judgment was entered confirming the award. The city then appealed, arguing that, in reinstating one-hour Sunday lunches based on departmental past practice, the arbitrator impermissibly exceeded the boundaries of the collective bargaining agreement.

The city relies for its position on *Grobet File Co. of America* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 134-135 (1988).[5] That case, however, contradicts the city's position and provides supportive legal framework for our acceptance of the arbitrator's determinations. "Although that case recognizes that an arbitrator may not [make an] award . . . beyond a limit clearly established by the contract, 'the limiting boundaries . . . must be set forth with clarity, and the limiting words must be plain. If there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil

---

[4]A Superior Court judge may vacate a labor arbitration award if the "arbitrator exceeded [his] powers," G. L. c. 150C, § 11(a)(3), as inserted by St. 1959, c. 546, § 1; that is, if he "grant[ed] relief beyond the scope of the arbitration agreement, see *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87 n.2 (1977), [awarded] relief beyond that to which the parties bound themselves, see *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 411 (1984), or [awarded] relief prohibited by law. See *Marlborough* v. *Cybulski, Ohnemus & Assocs.*, 370 Mass. 157, 160 (1976)." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1007.

[5]The city also cites as supporting authority our summary decision in *Somerville* v. *Somerville Mun. Employees Assn.*, 22 Mass. App. Ct. 1101 (1986). Parties may not, however, use as precedents in unrelated cases unpublished memoranda of this court issued under rule 1:28 of our rules, as amended, 10 Mass. App. Ct. 942 (1980). See *Lyons* v. *Labor Relations Commn.*, 19 Mass. App. Ct. 562, 566 & n.7 (1985).

disputes.' " *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1008, quoting from *Grobet File Co. of America* v. *RTC Sys., Inc., supra* at 135. "Once in the arena of arbitration, the powers of the arbitrator concerning the issue are wide and the scope of judicial review of the arbitration proceedings is narrow." *Ibid.* If it were "otherwise [, the court] would [be] undermin[ing] the predict-ability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties." *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985).

It is well known that a "labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law — the practices of the industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581-582 (1960).[6] It thus follows that an arbitrator may rely on past practice to clarify ambiguous contract provisions, see *Boise Cascade Corp.* v. *United Steelworkers, AFL-CIO, Local Union No. 7001*, 588 F.2d 127, 128-130 (5th Cir. 1979); *International Bhd. of Elec. Wkrs., Local Union No. 199* v. *United Tel. Co.*, 738 F.2d 1564 (11th Cir. 1984); to resolve contractual silence, see *Fairview Southdale Hosp.* v. *Minnesota Nurses Assn.*, 943 F.2d 809 (8th Cir. 1991); or to close gaps in general contract provisions, see *Cape Cod Gas Co.* v. *United Steelworkers, Local 13507*, 3 Mass. App. Ct. 258, 260-261 (1975). In the circumstances presented here, "[t]he interpretation of the contract was for the arbitrator." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1008.

Here, as in the *Grobet File Co.* case, the boundaries of the contract were not plain or distinct. Article XIX appeared to

---

[6]As "similar considerations and principles apply in labor cases arising under the closely comparable Federal statutes and Massachusetts statutes (such as G. L. c. 150C) regulating collective bargaining, labor disputes, and labor policy[, this court may use] Federal precedents . . . where [, as here,] reasonably applicable to situations arising under Massachusetts regulatory statutes." *Reilly* v. *Local 589, Amalgamated Transit Union*, 22 Mass. App. Ct. 558, 575 (1986).

subject police employees' existing lunch practices (presumably including the traditional one-hour Sunday lunch) to the provisions of subsection (a)(ii), expressly limiting each working day's lunch period to one-half hour. Article XXIII, § 2, however, provided that preexisting "benefits, privileges [and] working conditions . . . not specifically covered by this Agreement shall remain in full force and effect." Although the subject of lunches was covered by the agreement, the one-hour Sunday lunch practice for day shift employees was not specifically mentioned. An ambiguity consequently existed in the agreement which, under the *Grobet File Co.* case and a long line of precedents,[7] we think an arbitrator permissibly could resolve by interpreting the ambiguous contract language in the light of past practice. See and compare *Lenox Educ. Assn.* v. *Labor Relations Commn.*, 393 Mass. 276, 283 (1984); Elkouri & Elkouri, How Arbitration Works 451-454, 454-455 (4th ed. 1985). Contrast *Detroit Coil Co.* v. *International Assn. of Machinists & Aerospace Wkrs., Lodge No. 82*, 594 F.2d 575, 580-581 (6th Cir. 1979).

The parties' agreement here did not purport to withdraw the power of interpretation from the arbitrator but rather prohibited the arbitrator from issuing any award that would "alter, amend, add to or subtract from the express provisions" of the agreement." Recognizing and acting within that limitation, the arbitrator viewed his award as enforcing the express provisions of Article XXIII preserving past practices not specifically covered elsewhere in the agreement.[8]

In short, the arbitrator's award and opinion were "squarely within the reference which raised the issue whether the [city] violated [Article XXIII, § 2] of the collective bargaining agreement. The award was entirely responsive to that issue in

---

[7]See, e.g., *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 562 (1972), a case that reflects the lengths our appellate courts have been willing to go to support arbitrators' broad authority and preserve the integrity of the arbitral process. See also in this regard, the discussion in the recent case of *Barletta* v. *French*, ante 87 (1993).

[8]The arbitrator permissibly could have viewed the city's position as asking him to "subtract[] from the express provisions of the Agreement and giv[e] no meaning to the[] preservation provisions."

finding a violation." *School Comm. of Waltham* v. *Waltham Educators Assn.*, 398 Mass. 703, 706 (1986). The arbitrator's award and opinion show that he "was faithful to his obligations, even if he may have been in error in his interpretation of the . . . agreement. His conclusion is not so implausible as to justify our overturning it." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 188 (1984). Deciding as we do, we have no occasion to discuss whether the award is saved because the arbitrator could have found that the parties modified or waived the half-hour lunch provision. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1007-1008; *School Comm. of Boston* v. *United Steelworkers, Local 8751, AFL-CIO, CLC*, 29 Mass. App. Ct. 53, 58 (1990).

*Judgment affirmed.*