CITY OF BOSTON *vs.* LABOR RELATIONS COMMISSION
& another.[1]

No. 97-P-1232.

Suffolk. December 10, 1998. - November 1, 1999.

Present: LAURENCE, LENK, & BECK, JJ.

*Labor Relations Commission. Public Employment,* Police, Collective bargaining. *Labor,* Police, Collective bargaining. *Police,* Collective bargaining, Compensation. *Waiver. Contract,* Collective bargaining contract.

In a proceeding brought by a police officers' union against the city of Boston alleging a prohibited practice in the city's unilateral discontinuance of payment of pay differentials that for thirteen years had been paid to five police captains, which payment was not provided for in the applicable collective bargaining agreement, substantial evidence supported the conclusion of the Labor Relations Commission that the union had not waived its right under the contract to collectively bargain the city's change of its past payment practice. [174-178]

APPEAL from a decision of the Labor Relations Commission.

*John Foskett* for the plaintiff.

*John B. Cochran* for the defendant.

*Alan J. McDonald & Anne C. Ritterspach,* for the intervener, submitted a brief.

BECK, J. For at least thirteen years, the city of Boston (city) paid a differential of twenty-seven dollars per week to the five police captains who served as commanders of special units, even though there was nothing in the collective bargaining contract between the city and the union requiring such differential. In October, 1993, the city unilaterally stopped making the payments. The union challenged the city's action before the Labor Relations Commission (commission). The commission found that the city had committed an unfair labor practice and ordered, among other things, that the city bargain in good faith

---

[1]Boston Police Superior Officers Federation, intervener.

with the union over the decision. The city appeals, arguing that the union waived its right to bargain this issue.

*Factual background.* There are fifteen captains in the Boston Police Department. They are represented by the Boston Police Superior Officers Federation (union). Ten serve as district commanders who work days. The five other captains who are not district commanders serve as commanders of the following specialized units: hackney, paid detail, police academy, central attendance, and technical services. The collective bargaining agreement (agreement) governing the actions at issue in this case consists of the 1979 collective bargaining agreement between the parties as amended by subsequent memoranda of agreement.

Article XVII of the agreement is captioned "Compensation." It provides for differential payments by rank, including captains (section 1); officers serving as detectives (section 2); certain special assignments (section 3); and night shift assignments (section 7). Detectives assigned to a special assignment receive only the detective differential (section 5). On the other hand, section 6 provides that the differential for special assignments in section 3 "are in addition to any assignments otherwise specified in the 1965 Plan." (There is no other mention of the 1965 plan in the record before us.) Some, but not all, of the special units headed by the five captains who are not district commanders are among the special assignments listed in section 3.

Section 8 of article XVII provides that each of the "[c]aptains working days who serve as District Commanders shall . . . receive an additional differential of twenty seven ($27.00) dollars per week." It is undisputed that there is no comparable provision for the five captains who serve as commanders of the special units. It is also undisputed that, at least from 1980 to 1993, captains commanding the special units also received the twenty-seven dollars per week differential even though section 3 provides other differentials for members of some of the special units. The parties stipulated that the management of the police department knew or should have known that such payments were being made.

Article VII of the agreement, entitled "Stability of Agreement," provides as follows:

> "*Section 1.* No agreement, understanding, alteration or

variation of the agreements, terms or provisions herein contained shall bind the parties hereto unless made and executed in writing by the parties hereto.

"*Section 2.* The failure of the [city] or the [union] to insist, in any one or more incidents, upon performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of the right of the [city] or of the [union] to future performance of any such term or condition, and the obligation of the [union] and the [city] to such future performance shall continue in full force and effect."

Apparently as a result of an independent audit of the entire department in the summer of 1993, the city discovered what it termed an "error" in the payment of the differential to the special unit commanders. Acting on this discovery, the city unilaterally discontinued the practice as of the paychecks dated October 6, 1993.

*Prior proceedings.* Following the union's attempts to determine which captains were involved in the alleged mistake, the union filed a charge of prohibited practice with the commission on November 24, 1993. On March 16, 1994, after considering written submissions of the parties, the commission issued a complaint of prohibited practice. G. L. c. 150E, § 11.

The parties submitted the charge to an administrative law judge (ALJ) on stipulated facts and briefs. The city argued that by accepting articles XVII and VII of the agreement, the union had waived its right to bargain over the city's action, and that the express terms of the agreement precluded consideration of "past practice." The ALJ rejected the argument that the "Stability of Agreement" provisions "negate the concept of 'past practices' " and concluded that the city had not carried its heavy burden of showing waiver. The city appealed to the commission, which considered the record before the ALJ along with supplementary statements from the parties. The commission affirmed the decision of the ALJ, again rejecting the city's arguments that articles XVII and VII constituted waivers of the right to bargain the impact of discontinuing the payments.

*Issues on appeal.* On appeal to this court, the city argues that "the commission's decision is not supported by substantial evidence because the city presented clear and unmistakable proof that the union contractually waived its right to bargain the

issue of compensation to captains in charge of special units." The city claims that the express provision of a differential for the district commanders serving days is an implicit waiver of a differential for the five other captains. It also argues that the union waived the right to bargain over the termination of the differential for special unit captains because article XVII covers the entire subject of compensation to bargaining unit members and there is no provision in the article for such payment. Finally, the city argues in rather conclusory terms that "[t]he commission's decision is erroneous because the commission failed to give effect to article VII of the agreement which states that any verbal agreements or practices that conflict with the written terms of the agreement shall not be binding." The union argues that the city was obliged to provide notice and an opportunity to bargain the impact of its action and that neither article XVII nor article VII meets the standard for finding a waiver of that right. The commission focuses its argument on article VII, which it refers to as a "zipper clause," and argues that its decision is supported by substantial evidence because the "zipper clause" does not constitute a waiver of the union's right to bargain.

*Governing legal principles.* 1. *Standard of review.* A commission decision must be based on substantial evidence, "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). See *School Comm. of Boston* v. *Labor Relations Commn.*, 40 Mass. App. Ct. 327, 328-239 (1996). In determining whether a decision has such support, we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred upon it." G. L. c. 30A, § 14. *Commonwealth* v. *Labor Relations Commn.*, 404 Mass. 124, 127 (1989). See *School Comm. of E. Brookfield* v. *Labor Relations Commn.*, 16 Mass. App. Ct. 46, 52 (1983); *School Comm. of Boston* v. *Labor Relations Commn.*, 40 Mass. App. Ct. at 336. Moreover, we cannot substitute our judgment for that of the commission, even "on the basis of evidence in the record that might have warranted a contrary conclusion." *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 573 (1983).

2. *Mandatory subject of bargaining.* It is well established that a differential affects salary and is therefore a mandatory subject of bargaining. G. L. c. 150E, § 6. *Commonwealth* v. *Labor Relations Commn.*, 404 Mass. at 125. Moreover, "a unilateral

change in past practice, if it bears on terms and conditions of employment, violates the duty under §§ 6 and 10(*a*)(5) [of G. L. c. 150E] to bargain such changes collectively with the employee's representative." *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 177 (1997), citing *Lee* v. *Labor Relations Commn.*, 21 Mass. App. Ct. 166, 167 (1985).

3. *Past practice.* As the Supreme Court established long ago, a collective bargaining agreement is not necessarily limited to the terms of the written document. "There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties." *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 579 (1960), quoting from Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1498-1499 (1959). "Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement." *Id.* at 580. See *Cape Cod Gas Co.* v. *United Steelworkers of America, Local 13507*, 3 Mass. App. Ct. 258, 263 (1975) (typical technique for construing labor contract includes previous practices under predecessor bargaining agreements); *Peabody* v. *Peabody Police Benevolent Assn.*, 34 Mass. App. Ct. 113, 116 (1993) ("practices of the industry and the shop . . . equally part of the collective bargaining agreement although not expressed in it"), quoting from *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.*, 363 U.S. at 581-582. See also *Fairview Southdale Hosp.* v. *Minnesota Nurses Assn.*, 943 F.2d 809, 812 (8th Cir. 1991) (arbitrator did not violate essence of collective bargaining agreement in looking first to agreement and then to past practices for resolution of issue on which agreement is ambiguous or silent).

4. *Merger clause.* Not infrequently the parties to a collective bargaining agreement include a provision intended to foreclose argument about terms which are not explicitly included in the agreement. Such provisions are variously called a merger clause, an integration clause, or a zipper clause. See Estes & Love, The Ubiquitous Yet Illusive "Merger" Clause in Labor Agreements: Semantics, Applications, and Effect on Past Practice, 87 Ky. L.J. 1, 2-3 (1998). "[Such a] clause does not prevent interpretation and application of the agreement in accordance with past practice." *Chief Administrative Justice of the Trial Ct.* v. *Service Employees Intl. Union, Local 254*, 383 Mass. 791, 794 (1981). "A 'zipper clause' (a provision making the contract the

exclusive statement of the parties' rights) may . . . support a finding of waiver." *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 569 n.8. As might be expected, the effect of such a clause depends on the breadth and specificity of its terms, and extrinsic evidence such as the bargaining history or past practice, if the terms are ambiguous. See *Town of Marblehead*, 12 M.L.C. 1667, 1670-1671 (1986).

5. *Waiver.* As the city acknowledged in the posthearing brief it submitted to the ALJ but skirts in its brief in this court, contractual waiver is an affirmative defense. "In order to assert contractual waiver as an affirmative defense to a failure to bargain before changing employee wages, hours or working conditions, an employer has the burden of proving that the contract clearly, unequivocally and specifically authorizes its actions." *Commonwealth of Massachusetts*, 18 M.L.C. 1403, 1405 (1992). See *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 569 ("waiver must be shown clearly, unmistakably, and unequivocally"). See generally The Developing Labor Law 305-313 (Neighbors et al. eds., 3d ed. 1998).

*Discussion.* The parties agree that there is nothing in the agreement providing for payment of a differential to the five captains not serving days as district commanders; that for thirteen years the city paid such captains a differential of twenty-seven dollars per week; and that the city terminated the payments without notifying the union or giving the union an opportunity to bargain about the impact of the city's action. If the union did not waive its rights, such action on the part of the city would be a prohibited practice, as the union claims. G. L. c. 150E, § 10(a)(5). See *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. at 177. The city bears the burden of showing that the union did waive its rights. See *School Comm. of Boston* v. *Labor Relations Commn.*, 40 Mass. App. Ct. at 330; *Town of Marblehead*, 12 M.L.C. at 1670. We discuss in turn each of the city's arguments in support of its claim that there was no violation of the agreement or the law.

*Waiver under article XVII.* The city argues first that the "clear language" of section 8 "limits" the payment of the differential to the day district commanders. However, there is no limiting language in section 8. Section 8 is simply an affirmative statement that the day commanders are to receive a differential. In the absence of such clear language, there was no error in the commission's finding against the city on this argument. See

*Everett* v. *Labor Relations Commn.*, 416 Mass. 620, 627 (1993) (commission required to examine language of collective bargaining agreement in context of parties' conduct). More is required to show waiver. See *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 569, and cases cited.

The city then expands its argument and claims that "Article XVII covers the entire subject matter of base rates of pay and differentials for all bargaining unit members, including all captains" and that "all issues pertaining to differential pay necessarily were explored and yielded." The city particularly emphasizes that by agreeing to section 1, which establishes the base pay for captains, and section 8, which sets out the differential for captains serving as day district commanders, the union "knowingly agreed to the differences in pay for the two groups of captains." The union argues that the city waived this argument by failing to raise the issue in the administrative proceedings. See *Foxboro Harness, Inc.* v. *State Racing Commn.*, 42 Mass App. Ct. 82, 85 (1997), and cases cited. We have reviewed the record and conclude that, while not as explicit as its argument before us, the city did sufficiently raise the argument it now presents. We note, however, that the city's brief in this court cites no cases in support of its argument. See Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any case, the commission rejected the argument that article XVII constituted a waiver by contract to the extent that it was argued below, and even in its somewhat elaborated form in this court, it is unpersuasive.

It was the city's burden to show waiver. See *School Comm. of Boston* v. *Labor Relations Commn.*, 40 Mass. App. Ct. at 330. The evidence must be clear and unmistakable. Even a broad but general management rights clause does not constitute such a waiver. *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 569. In that case, a clause providing that "[e]xcept as specifically abridged, delegated, granted or modified by this Agreement, or any supplementary agreements that may hereafter be made, all of the rights, powers, and authority the employer had prior to the signing of this Agreement are retained . . . and remain exclusively and without limitation within the rights of management," was not a clear waiver of the right to bargain over the implementation of layoffs. *Id.* at 569 n.7. Here, there is nothing in article XVII indicating that, as the city argues, it "covers the entire subject matter [of compensa-

tion]." Cf. *Melrose Sch. Comm.*, 3 M.L.C. 1299, 1300, 1302 (1976) (words "[t]his contract is a complete contract between the parties covering all subjects of bargaining for the term hereof" combined with clauses negating any duty to bargain during term of contract and limiting reopeners to matters of hours and working conditions constituted waiver of right to bargain wages for newly created positions). Compare *Whitman-Hanson Reg. Sch. Comm.*, 10 M.L.C. 1283, 1285 (1983) (provision that agreement "incorporates the entire understanding of the Parties on all issues which were or could have been the subject of negotiations" not sufficient to constitute a waiver of right to bargain over attendance at professional convention).

The only evidence of a waiver under Article XVII is that the article is silent on the issue of differentials for the special unit captains. Silence on an issue, without more, particularly in the face of past practice, does not constitute a waiver. See *Whitman-Hanson Reg. Sch. Comm.*, 10 M.L.C. at 1287. At best, the terms of article XVII, in the face of past practice, are ambiguous. Ambiguous language may be clarified by bargaining history, *Town of Marblehead*, 12 M.L.C. at 1670, or by past practice as evidence of the intent of the parties. *Peabody* v. *Peabody Police Benevolent Assn.*, 34 Mass. App. Ct. at 116. Here there is no evidence of bargaining history in the record and there is no dispute about past practice. Hence, the commission's determination that "the city failed to provide any evidence to show that the parties intended Article XVII to proscribe the payment of a differential to those not specifically covered under the article" is supported by substantial evidence. See *Chief Administrative Justice of the Trial Ct.* v. *Service Employees Intl. Union, Local 254*, 383 Mass. at 794 ("Reference to some standard or practice outside the agreement seems essential if the agreement is to have meaningful application, and reference to previous practice is an orthodox source of meaning").

*Waiver under article VII.* Next the city argues that section 1 of article VII precludes payment of the differential because the terms of such payments are not in writing. According to the city, "[t]he clear import of [this section] is that no past practice or verbal agreement which conflicts with the express written provisions of the Agreement will be effective to bind the parties." The commission rejected the argument that this provision "negate[s] [past] practices." According to the commission, "[t]he language in Section 1 of Article VII pertains to matters

within the contract, it does not expressly or by implication pertain to practices existing outside of the parties' agreement." This finding is consistent with the language of the agreement as well as with commission precedent.

First, the past practice of paying the differential is not in conflict with the written agreement. It is true that the terms of the past practice are not explicitly included in the agreement, but that is generally true when past practice is an issue. Interpretation of the clause is within the province of the commission, which is "presumably equipped or informed by experience to deal with a specialized field of knowledge." *School Comm. of E. Brookfield* v. *Labor Relations Commn.*, 16 Mass. App. Ct. at 52-53, quoting from *Universal Camera Corp.* v. *National Labor Relations Bd.*, 340 U.S. 474, 488 (1951). We look to the commission for interpretation because of its "special familiarity with labor contracts." *Boston Teachers Union, Local 66* v. *Boston*, 44 Mass. App. Ct. 746, 752 (1998). The words of the phrase "agreements, terms or provisions *herein contained*" (emphasis added) in section 1 of article VII support the commission's finding that the requirement of a writing applies to "matters within the contract," and does not constitute a waiver of the right to bargain over a change in past practice. See *Whitman-Hanson Reg. Sch. Comm.*, 10 M.L.C. at 1286 (zipper clause no bar to bargaining over employer-initiated changes affecting terms and conditions of employment unless changes "contained in" language of collective bargaining agreement). See also *Melrose Sch. Comm.*, 9 M.L.C. 1713, 1725 (1983).

Finally, the city, almost as an afterthought, asserts that "the [c]ity has the right to insist on future performance of the express terms of the agreement, and its prior failure to insist on its contractual rights does not constitute forfeiture of its previously negotiated rights," in apparent reference to section 2 of article VII of the agreement. Even were we to consider this point, which does not reach the level of appellate argument, see Mass. R.A.P. 16(a)(4); *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 664-665 (1997), the city's termination without notice does not constitute "insistence on its contractual rights" since, as discussed above, at best the language of the agreement in the context of past practice is ambiguous on the subject of differential payments to special unit commanders. In sum, considering all the city's arguments together, and giving due deference to the knowledge and experience of the commission,

the conclusion of the commission is supported by substantial evidence.

*Decision and order of the commission affirmed.*