55 Mass. App. Ct. 285 (2002)          285

Massachusetts Correction Officers Federated Union *v.* Sheriff of Bristol County.

# MASSACHUSETTS CORRECTION OFFICERS FEDERATED UNION *vs.* SHERIFF OF BRISTOL COUNTY.

No. 00-P-201.

Suffolk. January 8, 2002. - June 21, 2002.

Present: COWIN, BERRY, & MILLS, JJ.

*Sheriff. Correction Officer. Public Employment,* Collective bargaining. *Labor,* Arbitration, Collective bargaining, Grievance procedure. *Arbitration,* Collective bargaining, Scope of arbitration, Judicial review.

This court concluded that the parties to a collective bargaining agreement intended to include in their agreement a "broad" clause under which all disputes, including procedural disputes, would be resolved by an arbitrator; that references to the possibility of settlements or to the requirements regarding how grievances are to be set forth were not to be perceived as "words of limitation"; and that, because it could not be said with positive assurance that the arbitration clause was not susceptible of an interpretation that covered the asserted dispute, there was a presumption of arbitrability. [286-290]

This court declined to depart from the plain meaning of a collective bargaining agreement to use certain alleged past practices of the parties as a basis for interpreting the agreement, absent a showing that the past practices were unequivocal, clearly enumerated and acted upon, and readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties. [290-291]

Where, although a civil complaint contained prayers for preliminary and permanent injunctive relief, the defendant employer was on notice both by the complaint itself and by G. L. c. 150, § 2, that application was being made by the plaintiff union for an order to arbitrate, the judge acted consistently with § 2 in summarily ordering arbitration. [291-293]

CIVIL ACTION commenced in the Superior Court Department on September 9, 1999.

The case was heard by *Vieri Volterra,* J.

*Matthew E. Dwyer* for the plaintiff.

*Robert M. Novack* (*Ronald J. Lowenstein* with him) for the defendant.

COWIN, J. Pursuant to a collective bargaining agreement, the

Massachusetts Correction Officers Federated Union (union) sought arbitration regarding a series of grievances initiated on behalf of its members. The sheriff of Bristol County (employer) rejected the arbitration demands, asserting that the union had failed to comply with procedural requirements established by the agreement. Following the filing by the union of a complaint in accordance with G. L. c. 150C, § 2(*a*), a Superior Court judge ordered the parties to proceed to arbitration on all outstanding grievances. The employer appealed, arguing that (1) the arbitration clause of the collective bargaining agreement did not encompass the procedural disputes in question, thus leaving such disputes to resolution not by an arbitrator but by a court; (2) the past practice of the parties had been that disputes of this nature were not arbitrated, thus further indicating that arbitration of the procedural questions was not contemplated; and (3) the judge improperly acted on the merits of the union's complaint after conducting only a preliminary injunction hearing.[1] We conclude that the arbitration clause at issue is a so-called "broad" clause that authorized submission of the procedural disputes to the arbitrator. We determine also that the judge acted consistently with G. L. c. 150C, § 2, in summarily ordering arbitration. Accordingly, we affirm. We refer to underlying undisputed facts and prior proceedings as necessary throughout the opinion.

1. *The arbitration clause.* The collective bargaining agreement provides, in Article IV, as follows: "Should a difference arise between the Sheriff and the Union *as to the meaning and application of this AGREEMENT which cannot be settled by an employee and his supervisor*, such difference shall be considered a grievance when reduced to writing containing a concise statement of facts upon which the grievance is based and the specific provision or provisions of this Agreement alleged to be

---

[1]On motion by the employer, the order compelling arbitration was stayed by a single justice of this court because of the myriad number of claims and in the interest of judicial economy, although that justice noted that she was "not entirely convinced that the [employer] has a likelihood of success on the merits because of the broad arbitration clause at issue in this case." Leave to appeal the interlocutory order was subsequently granted nunc pro tunc. See *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist.*, 18 Mass. App. Ct. 117, 118 (1984).

violated" (emphasis supplied). The written submission must be made within five days of the time such difference arises or reasonably comes to the attention of the grievant. The grievance is then subjected to a three-step resolution process, the third step of which is arbitration.

Beginning in 1997, the union sought arbitration of the grievances in question. The employer declined to arbitrate, contending that the union had failed to comply with certain procedural requirements.[2] Whether such procedural requirements were in fact satisfied is not before us. The question is what forum is the appropriate one in which to decide. The union construes the applicable arbitration clause quoted above as a "broad" clause contemplating the referral of all disputes under the contract, including procedural disputes, to the arbitrator. The employer denies that the clause is a "broad" clause, asserting that certain words of limitation preclude arbitration of the procedural issues and that determinations with respect to such issues are for the court. The union convinced the Superior Court judge that its view of the arbitration clause as a "broad" clause was correct. We agree.

Arbitration results from a contractual agreement of the parties, and arbitration of an issue cannot be imposed on a party who has not agreed that that issue shall be so adjudicated. *AT&T Technologies, Inc.* v. *Communications Wkrs. of America*, 475 U.S. 643, 648 (1986). *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee*, 430 Mass. 417, 420-421 (1999). Whether given parties have agreed to arbitrate a particular issue is a matter of contract interpretation, and thus is normally for the court to decide. *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-583 (1960). *Chicopee, supra* at 421. In construing arbitration clauses, we proceed on the basis of "a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless

---

[2]The grievances covered approximately twenty different matters. The employer does not assert that the grievances in question were not substantively arbitrable. He contends only that the union failed to satisfy certain procedural requirements that are conditions to the right to invoke the arbitration process. The asserted failures include late filing of grievances, requests for step II hearings, and arbitration claims; absence of filings altogether in certain cases; and filing with the wrong representatives of the employer.

it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage'. . . . Such a presumption is particularly applicable where the clause is as broad as the one employed in this case." (Citation omitted.) *AT&T Technologies, Inc., supra* at 650, quoting from *United Steelworkers* v. *Warrior & Gulf Nav. Co., supra. Chicopee, supra.*

In *United Steelworkers* v. *Warrior & Gulf Nav. Co., supra* at 585, the Supreme Court treated as "broad" a clause that called for the arbitration of any differences "as to the meaning and application of the . . . Agreement," thus construing a clause which employed the same terms as are before us in this case. However, it is not necessary to canvass the decisions from various jurisdictions that have identified arbitration clauses as broad or limited,[3] for the employer here concedes that the reference in the present arbitration clause to differences "as to the meaning and application of this AGREEMENT" would, standing alone, make the clause a broad clause, thereby subjecting the procedural disputes in question to determination by the arbitrator. Notwithstanding that concession, the employer argues that the words do not stand alone, but are instead limited by the subsequent reference to differences "which cannot be settled by an employee and his supervisor." The employer argues as well that the requirement that the grievance be reduced to a "writing containing a concise statement of facts upon which the grievance is based and the specific provision or provisions of this Agreement alleged to be violated" also has the effect of limiting the generality of the preceding more global reference. Thus, the case turns on a determination of what the parties intended by the language upon which the employer relies.

We do not read the reference to grievances as differences "which cannot be settled by an employee and his supervisor" as an attempt by the parties to limit the jurisdiction of the arbitrator. Indeed, had that been the parties' purpose, it is doubtful that they would have chosen this ambiguous language as the means of expressing their intention. By contrast, see *Chicopee, supra* at 419, which dealt with a clause referring to arbitration

---

[3]For one interested in such accumulations, see *Chicopee, supra* at 422-428.

of grievances "as to the meaning, application or interpretation of this Agreement relating to wages, hours, standards of productivity or performance or other terms and conditions of employment." There the Supreme Judicial Court held that the clause limited arbitration to "concrete issues about the way an employer interacts with its employees on the job." *Id.* at 424. The agreement that we presently review falls far short of such a comprehensive limitation, and we believe that no limitation was intended. Rather, we read the clause in question as nothing more than a recognition that formal grievance proceedings will be conducted only when the parties are unable to accommodate each other through negotiation.[4]

Likewise, we disagree with the employer's proposition that the requirement that the grievant provide a concise written statement of facts, together with a reference to the specific provision or provisions of the agreement allegedly violated, removes procedural issues from the arbitrator's jurisdiction because procedural defects in prosecuting grievances are not "violations" of the agreement. This argument parses the language too finely. The words in question have been included for the understandable purpose of requiring that grievants specify precisely the alleged breaches of which they complain; the language was not included for the purpose of circumscribing the arbitrator's jurisdiction. Had the parties intended to reduce the number of issues on which the arbitrator is entitled to act, they surely would have found a less opaque way in which to say so.

For the reasons stated, we conclude that the parties intended to include in their agreement a "broad" clause under which all disputes, including procedural disputes, would be resolved by the arbitrator. We do not perceive the references to the possibility of settlements or to the requirements regarding how grievances are to be set forth as "words of limitation" as that term is

---

[4]We are unwilling to accord the weight that the employer assigns to the fact that the terms "Sheriff" and "Union" are used in one portion of Article IV and the terms "employee and supervisor" are used in another portion. The employer argues that use of the latter terms is further evidence that the parties intended to arbitrate only those issues that could be settled at the supervisor's level. We are not convinced that the parties chose this change in terminology as the mechanism by which to define the arbitrator's jurisdiction.

.

used in *Chicopee, supra.* Because it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *United Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U.S. at 582-583, there is a presumption of arbitrability, and the motion judge properly acted accordingly.

2. *Past practices.* The employer argues in essence that, even if the express language of the arbitration clause does not by itself disclose the parties' intention that procedural issues not be decided by the arbitrator, the parties' past practices in this regard inform the meaning of the clause and establish that such questions are not arbitrable. Relying on the proposition that the parties have in the past agreed that neither claims for declaratory judgments nor class action claims shall be the subjects of grievances,[5] the employer presses the logic that, since declaratory judgment and class action cases do not involve the claims of specific employees, they cannot be "settled by an employee and his supervisor." That means that all issues not directly related to working conditions and therefore not so negotiable are excluded from arbitration. We put aside our skepticism regarding the idea that declaratory judgment and class action claims are not susceptible to compromise short of litigation, and address the employer's argument regarding past practices.

Past practices of the parties, once established, often serve as a basis for the interpretation of collective bargaining agreements. "[R]eference to previous practice is an orthodox source of meaning." *Chief Administrative Justice of the Trial Ct.* v. *Service Employees Intl. Union, Local 254*, 383 Mass. 791, 794 (1981). A collective bargaining agreement is not necessarily limited to the terms of the written document. *Boston* v. *Labor Relations Commn.*, 48 Mass. App. Ct. 169, 173 (1999). Construction of a labor contract may be based on previous practices under prior bargaining agreements. *Cape Cod Gas Co.* v. *United Steelworkers of America, Local 13507*, 3 Mass. App. Ct. 258, 263 (1975).

---

[5]The employer characterized as "declaratory judgment" and "class action" claims two grievances, one concerning interpretation of the "Shift Trades" clause in the agreement, and another challenging the employer's unilateral decision to institute examinations for persons seeking promotion to the position of lieutenant.

55 Mass. App. Ct. 285 (2002)                    291

Massachusetts Correction Officers Federated Union *v.* Sheriff of Bristol County.

The practices of the industry and of the shop are a part of the collective bargaining agreement although not expressed in it. *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.*, 363 U.S. at 581-582.

However, if past practices are to be used to interpret the contract, it must be established that such past practices actually existed. For this purpose, a practice must have been "clearly stated and understood, maintained over a reasonable time, and accepted by both parties, and [one that] could not be terminated unilaterally." *Chief Administrative Justice of the Trial Ct.*, *supra* at 792. The employer identifies as a past practice the preclusion of declaratory judgment and class action claims as subjects of grievances (thereby suggesting that the procedural issues at stake here also could not be grieved). The weakness of this proposition is that, as the union observes, there is insufficient evidence that such a past practice existed.

Commentators appear to agree that a past practice will ordinarily be considered binding on the parties only when there is "strong proof of its existence." Elkouri & Elkouri, How Arbitration Works 632 (5th ed. 1997). There must be evidence that the practice is "(1) unequivocal; (2) clearly enumerated and acted upon; [and] (3) readily ascertainable over a reasonable period of time as a fixed, and established practice accepted by both Parties." *Ibid.* The evidence here that a past practice existed does not satisfy these criteria. The supposition is predicated on assertions contained in letters from the employer's counsel and a filing by the employer with the Labor Relations Commission unaccompanied by any foundational evidence that there actually was such a practice. In the absence of such a showing, we do not depart from the plain meaning of the written contract.[6]

3. *The summary proceeding.* The employer complains that he

---

[6]Because the evidence does not support a finding that a relevant past practice existed, it is not necessary to address the union's contention that it is not bound by a practice agreed to by a prior union in connection with a previous contract.

We note furthermore that, even had the employer presented convincing evidence that a past practice existed, success on the subject may have been of little value to him because arguably it would be for the arbitrator to assess what the effect of the past practice was to be. In light of our ruling, we need not address that question.

was led to believe that the hearing before the Superior Court judge would relate only to the union's application for preliminary injunctive relief and would not be on the merits of the complaint. He argues that he was therefore prepared only to address the various considerations relevant to the grant or denial of a preliminary injunction, see *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980), and was not prepared to deal with the factors that were meaningful to the question whether there should ultimately be arbitration regarding the procedural defenses. In our view, the employer is drawing a distinction without a difference.

It is clear from the complaint that the union sought an order compelling arbitration. While the complaint does contain prayers for preliminary and permanent injunctive relief, and while the notice of hearing forwarded by the court to the parties does refer to a preliminary injunction hearing, the employer was on notice both by the complaint itself and by the applicable statute that application was being made for an order to arbitrate.

The first line of the complaint states that it is "a complaint by a labor organization . . . to compel arbitration of a series of longstanding grievances filed under the applicable collective bargaining agreement." The prayer for a preliminary injunction seeks an order that the employer "submit, forthwith, the matters listed in Union counsel's letter of April 16, 1999 to the panel of agreed upon arbitrators on a rotating basis, for resolution in accordance with the grievance-arbitration machinery of the contract." Thus, if the union were granted such preliminary injunctive relief, the matters would be ordered to arbitration in advance of any ruling on permanent injunctive relief. In this regard, the union's prayer for permanent relief does not derogate in any way from the preliminary relief sought, i.e., that there be an order to submit to arbitration "forthwith."

The proceeding was plainly one that implicated the provisions of G. L. c. 150C, § 2(*a*), which authorizes "[a] party aggrieved by the failure of another to proceed to arbitration under an agreement . . . [to] apply to the superior court for an order directing the parties to proceed to arbitration." The statute provides that "the court shall proceed *summarily* to the

determination of the issue so raised'' (emphasis supplied).[7] Once the court determines that the subject matter in question is arbitrable in accordance with the terms of the governing agreement, it "shall . . . order arbitration; otherwise, the application shall be denied." *Ibid*. In either event, the proceeding is intended to be *summary*. See the analogous provision in G. L. c. 251, § 2(*a*), applicable to the arbitration of commercial disputes. The employer received the opportunity to which he was entitled to voice his opposition to the order sought by the union.

> *Order compelling arbitration affirmed.*

---

[7]The provision of Mass.R.Civ.P. 65(b)(2), 365 Mass. 833 (1974), to the effect that there may be consolidation of a preliminary injunction proceeding with trial on the merits is inapplicable. The present case is governed not by that general provision, but rather by the specific provision of G. L. c. 150C, § 2(*a*), including its directive that there be a summary disposition.