[No. E031384. Fourth Dist., Div. Two. Mar. 12, 2003.]

RIVERSIDE SHERIFF'S ASSOCIATION et al., Plaintiffs and Appellants,
v.
COUNTY OF RIVERSIDE et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B. of the Discussion.

COUNSEL

Olins, Foerster & Hayes and Barrett J. Foerster for Plaintiffs and Appellants.

Filarsky & Watt and Steve A. Filarsky for Defendants and Respondents.

OPINION

RAMIREZ, P. J.—Plaintiffs Riverside Sheriff's Association (RSA) and Linda Morelli (Morelli, collectively Plaintiffs) appeal from the denial of their petition for a writ of mandate seeking to void a policy of defendant County of Riverside (County) to deny step salary increases to certain deputies placed on leave pursuant to Labor Code section 4850[1] (4850 leave) and seeking to obtain a step increase for Morelli. Plaintiffs claim that the undisputed facts required the trial court to grant the petition as a matter of law. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY

Morelli was a deputy sheriff employed by County, as a helicopter pilot, from December 9, 1993, to June 28, 2000. Her performance evaluations, which she received in June of every year, had always been satisfactory. She

---

[1] "(a) Whenever any person listed in subdivision (b) . . . is disabled . . . by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled . . . to a leave of absence while so disabled without loss of salary in lieu of temporary disability payments or maintenance allowance payments under Section 139.5, if any, which would be payable under this chapter, for the period of the disability, but not exceeding one year, or until that earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3.

"(b) The persons eligible under subdivision (a) include all of the following: [¶] . . . [¶] (4) Officers or employees of any sheriff's offices." (Lab. Code, § 4850.)

had never been denied a step increase in pay on her December 9 anniversary, and was unaware that those increases were based upon a performance review. On January 30, 1999, Morelli was injured in the course of duty when her helicopter crashed. She was immediately placed on 4850 leave. While on leave she continued to receive her regular salary, and to accrue sick time, vacation and other benefits. After rehabilitation she returned to work for approximately six weeks in late September 1999. However, her injuries rendered her unable to continue her employment.

In December 1999 Morelli was denied a step salary increase because she had been absent and her performance could not be evaluated, despite the fact that she had completed at least 2,080 hours on a paid status since her last step increase. Pursuant to the memorandum of understanding between RSA and County (MOU), she was again considered for a step increase 90 days later. That increase was also denied since her situation had not changed.

Morelli challenged the denial of a step increase before the Workers' Compensation Appeal Board. She also contacted RSA and requested representation in a grievance, which County denied. Thereafter, Morelli requested arbitration.

At the arbitration only two issues were presented: (1) whether County violated article V, section 1 of the operative MOU when it denied Morelli a step increase in December 1999; and (2) whether the grievance was filed in a timely fashion. On June 22, 2001, the arbitrator issued his opinion in favor of County. He found that County had waived its right to complain that Morelli's grievance was not timely by failing to raise it at any earlier point in the proceedings. He also found that the MOU did not preclude a person on 4850 leave from receiving a step increase. However, neither did it preclude County from establishing reasonable standards as a basis for granting a step increase. RSA did not establish that County had a binding past practice of automatically granting step increases to deputies on 4850 leave. Nevertheless, for purposes of his decision, the arbitrator assumed that there was such a past practice and then concluded that RSA knew about the 1997 change in the past practice as early as 1998, but did not attempt to protest or challenge it. RSA thereby waived any claim that County failed to meet and confer with it, or that the policy change was somehow void. Finally, he concluded that Morelli had not worked a sufficient time to be evaluated since her last step increase. He also noted that in postarbitration briefing, RSA had attempted to raise several issues for the first time. Because the issues were not raised in the grievance, the arbitrator declined to rule on them.

Plaintiffs then filed a petition for declaratory relief and for a writ of mandate. They claimed that County had (1) violated the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.) by failing to meet and

confer with RSA before changing a policy affecting wages, hours and terms and conditions of employment; (2) breached the terms of the MOU by unilaterally creating a new policy denying step increases to deputies on 4850 leave; and (3) violated Labor Code section 4850 by denying Morelli a step increase while she was on 4850 leave. The petition for writ of mandate was denied. Judgment was entered on January 25, 2002, and this appeal followed.

DISCUSSION

Plaintiffs sought both a traditional writ under Code of Civil Procedure section 1085 (County's alleged violation of the MMBA) and an administrative writ under Code of Civil Procedure section 1094.5 (whether Morelli was entitled to a step increase under the MOU). As each writ requires the application of a distinct set of rules, we will consider them in turn.

A.   *Code of Civil Procedure Section 1085 Ordinary Writ*

RSA claims that in 1997 County changed its policy with respect to granting step pay increases to deputies on 4850 leave without first consulting with it, thereby violating the MMBA. It requested an order voiding the new policy.   ▆   In order to obtain an ordinary writ under Code of Civil Procedure section 1085 a petitioner must show that there is no other plain, speedy and adequate remedy, that the respondent has failed to perform an act despite a clear, present and ministerial duty to do so, and that the petitioner has a clear, present and beneficial right to that performance. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540 [28 Cal.Rptr.2d 617, 869 P.2d 1142]; *Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 842-843 [102 Cal.Rptr.2d 468].) The petitioner bears the burden of pleading and proving the facts upon which the claim is based. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153-1154 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

▆   In reviewing the trial court's denial of the writ, we must determine whether its findings and judgment are supported by substantial evidence. However, where the facts are undisputed and a question of law is involved, we may exercise our independent judgment. (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660].)

Government Code section 3504.5 requires a public agency's governing body to "give reasonable written notice to each recognized employee organization affected of any ordinance, rule, resolution, or regulation directly

relating to matters within the scope of representation proposed to be adopted by the governing body . . . and shall give such recognized employee organization the opportunity to meet with the governing body . . . ." In addition, a public agency is required to meet and confer in good faith with the representatives of a recognized employee organization before determining a policy or course of action "regarding wages, hours, and other terms and conditions of employment." (Gov. Code, § 3505.)

A public agency's action must have a significant effect on wages, hours and other terms and conditions of employment before it will be subject to the provisions of the MMBA. (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 659 [224 Cal.Rptr. 688, 715 P.2d 648].) Here RSA failed to demonstrate that County's denial of step increases to employees on 4850 leave had a significant effect on the terms of employment since it did not demonstrate that any employee was entitled to a step increase or that any binding past practice was altered.

The MOU, article V, section 1.A. provides that "[t]he compensation of every person employed in a regular position on a step basis shall be considered for increase upon their anniversary date, exception [*sic*] as herein otherwise provided." Article V, section 1.B. provides, in part, that the anniversary date "shall be the first day of the pay period following the completion of an additional 2080 hours (approximately one (1) year) in a paid status, not including overtime . . . . [¶] . . . [¶] Prior to the anniversary date the Department Head, after review with the employee involved, shall inform the Human Resources Director in writing on the appropriate form whether or not they allow the increase. . . . Such salary increases shall be given only on the affirmative decision of the Department Head, which shall be made only on the basis of continued satisfactory performance in the position."

We agree with the trial court that the MOU requires the approval of a deputy's supervisor prior to the issuance of a step increase. Plaintiffs' assertion that step increases are based solely upon longevity is belied by the agreement that a deputy shall only be "considered" for a step increase on his or her anniversary date. Use of the term "considered" indicates some discretion will be exercised in determining whether such an increase will be granted. Our interpretation of the MOU is bolstered by the undisputed evidence in the record that, in practice, County had sent salary review reports on employees eligible for step increases to the appropriate chief to be granted or denied since at least 1989.

Still, Plaintiffs argue that County had a past practice of granting step increases to deputies on 4850 leave as a matter of course, and could not

unilaterally change that practice without violating the MMBA. Neither party has cited California authority that defines what constitutes a past practice, the alteration of which requires compliance with the MMBA. Indeed, while California Courts of Appeal have held that unilateral alterations in past practices can violate the MMBA, they have not clearly stated what constitutes a past practice. (See, e.g., *California State Employees' Assn. v. Public Employment Relations Bd.* (1996) 51 Cal.App.4th 923, 936-937 [59 Cal.Rptr.2d 488].) ■ In the absence of other authority we look to the definition applied by the California Public Employment Relations Board, which has adopted the rule that "to be binding a past practice: [¶] . . . must be (1) unequivocal; (2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties. [Citation.] The [California Public Employment Relations] Board has . . . described a valid past practice as one that is 'regular and consistent' or 'historic and accepted.' . . ." (*California State Employees Association, SEIU Local 1000* (2002) PERB Dec. No. SA-CO-237-S [26 PERC ¶ 33058, p. 18].)[2] ■ Using this meaning, we agree with the trial court's implied finding that Plaintiffs' showing was insufficient to meet their burden of proving the existence of a binding past practice.

On this point, Plaintiffs' evidence consisted of the testimony of Scott Teutscher (Teutscher) who had been employed by County as a deputy sheriff, but who for the past eight months had been employed by RSA, and Darryl Drott (Drott), the general manager of RSA, who had also been a County deputy sheriff.

Teutscher was medically retired from his employment as a deputy in January 1998 as the result of an injury that forced him into 4850 leave on June 26, 1996. Prior to his retirement, he received two step increases in his salary, in or around December 1996 and December 1997, despite the fact that he had not worked, and had not, to his knowledge, been evaluated. While employed as a deputy, he never heard of anyone being denied a step increase while on 4850 leave, but thought they were automatic unless discipline or incompetence was involved.

Drott also received a step increase while on 4850 leave prior to his medical retirement from his position as a County deputy in 1996. He had

---

[2]Other states have also applied this definition. (See, e.g., *Mass. Corr. Officers Fed. Union v. Sheriff* (2002) 55 Mass.App. 285 [770 N.E.2d 528, 533], citing Elkouri & Elkouri, How Arbitration Works 632 (5th ed. 1997); *City of Reno v. Reno Fire Dep't* (1995) 111 Nev. 1004 [899 P.2d 1115, 1119] and *Seton v. Unemployment Comp. Bd. of Review* (Pa. Commw. Ct. 1995) 663 A.2d 296, 299.)

been on 4850 leave for a cumulative period of 47 weeks prior to receiving a step increase. Prior to 1997 or 1998, County had granted step increases to deputies on 4850 leave, and deputies believed the increases were automatic unless one was disciplined or found to be incompetent.

Plaintiffs also relied upon the testimony of Susan Hansen (Hansen), the deputy in charge of personnel. In the latter part of 1996 or 1997 the issue of merit increases and absenteeism had been brought to her attention for the first time. She and a human resources officer discussed whether a deputy who was not working, so that his or her performance could not be evaluated, should be granted a step increase. On the recommendation of human resources, the sheriff's department command staff concluded that a deputy who had not worked for roughly half a year, and could therefore not be evaluated, should not receive a step increase, and that this policy should be implemented uniformly. However, each deputy's situation was to be considered individually. In reaching this agreement they discussed the issue recognizing that they had been granting step increases to deputies on 4850 leave.

While this evidence does show that prior to 1998 some deputies obtained step increases while on 4850 leave without having worked a sufficient time to be evaluated, it does not establish that such a practice was unequivocal, regular and consistent, clearly enunciated or readily ascertainable over a reasonable period of time. Indeed, Hansen's testimony that the sheriff's command staff determined that a policy should be uniformly applied supports a reasonable inference that in the past, step increases for those on 4850 leave had been both granted and denied. Further, her testimony that each case would continue to be reviewed on an individual basis supports the inference that in the future step increases for those on 4850 leave would continue to be both granted and denied. Thus, there was not even a showing that the policy was changed.

Plaintiffs did not meet their burden of establishing that a binding past practice to automatically grant step increases to deputies on 4850 leave existed. Therefore, they did not establish that County's action had a significant effect on wages, hours or other terms and conditions of employment. Consequently, there was no requirement to meet and confer under the MMBA. Thus, Plaintiffs have failed to demonstrate that County did not perform an act despite a clear, present and ministerial duty to do so and are not entitled to a writ of mandate under Code of Civil Procedure section 1085.

B.  *Code of Civil Procedure Section 1094.5 Administrative Writ**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

The judgment denying the petition for a writ of mandate is affirmed. Defendants to recover their costs on appeal.

Hollenhorst, J., and Richli, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 25, 2003. George, C. J., did not participate therein.

---

*See footnote, *ante*, page 1285.