Filed 3/20/15  Riverside Sheriff's Assn. v. County of Riverside CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RIVERSIDE SHERIFFS' ASSOCIATION et al., | |
| Plaintiffs and Appellants, | G049825 |
| v. | (Super. Ct. No. RIC1119658) |
| COUNTY OF RIVERSIDE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Riverside County, Sharon J. Waters, Judge.  Request to submit additional legal authority.  Judgment affirmed. Request denied.

Hayes & Cunningham, Dennis J. Hayes and Christine L. Cunningham; Olins Riviere Coates and Bagula and Adam E. Chaikin, for Plaintiffs and Appellants.

The Zappia Law Firm, Edward P. Zappia and Anna Zappia, for Defendants and Respondents.

*          *          *

Plaintiffs Riverside Sheriffs' Association (RSA) and David Topping, an investigator in the district attorney's office, filed a petition for a writ of mandate against the County of Riverside's Board of Supervisors (Board), its human resource director, and the district attorney (collectively County). The petition sought to reverse the Board's rejection of an arbitrator's decision that found County violated the Meyers-Milias-Brown Act (MMBA; Gov. Code, § 3500 et seq.) by failing to meet and confer with RSA before revising a policy concerning employees' overnight retention of County-owned vehicles. After a hearing, the trial court denied the petition and entered judgment in favor of defendants.

On appeal, plaintiffs argue County's unilateral modification of the overnight vehicle retention policy violated (1) the 2008-2011 Memorandum of Understanding (MOU) between RSA and County, (2) a 2005 agreement that settled a prior lawsuit between the parties concerning the overnight use of County-owned vehicles, and (3) a long-standing arrangement whereby the district attorney's office allowed its investigators to use County-owned vehicles to drive to and from work. We shall affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND

RSA is a labor association that represents persons employed in County's law enforcement unit. This unit includes investigators with the district attorney's office. Over the years, RSA and County have negotiated labor agreements, known as Memoranda of Understanding (MOU) governing the terms and conditions of employment for law enforcement unit employees.

In the mid-1990's, the Board created Policy D-10. The policy covers the overnight retention of County-owned vehicles by employees. The appellate record does

2

not contain a copy of the original policy, but the Board issued a revision of Policy D-10 in 2003.

As revised, Policy D-10 limited overnight retention of County-owned vehicles to employees (1) routinely assigned to on-call duties that required use of a specially equipped vehicle, or (2) who worked at non-County facilities where "the distance from the employee's residence to the . . . job site is less than the distance from the location where" the County vehicle would normally be parked overnight. Expressly excluded from the revised policy were vehicles assigned to persons who were allowed "use of a County vehicle as [a] condition of employment." The revision explained that "Authorization of overnight retention of vehicles is not intended for the convenience, benefit, betterment or private use of County employees," and since it "reduces availability of the vehicles, and generally results in higher operating costs to the County," the practice "is appropriate only when it is in the overall best interest of the County through improved services and/or reduced costs."

RSA filed a grievance with the County and petitioned for a writ of mandate on behalf of all of its members challenging the 2003 revision. The petition alleged County's failure to meet and confer with the RSA "to negotiate a change in the long-standing benefit that the overnight usage of County vehicles provided to County employees" violated the MMBA.

The parties resolved the dispute by a written settlement in 2005. RSA agreed to withdraw its grievance and dismiss the petition in return for County's agreement to allow the overnight retention of its vehicles by "on call" members of the bomb squad and "canine handlers" who were "working with their canines." County also agreed "not to make any changes in working conditions within the scope of representation . . ., including any vehicle or transportation policies that fall within [that] scope of representation, prior to meeting and conferring in good faith with RSA." The

3

settlement included a clause declaring it "contains the entire agreement between the parties on th[e] subject matter."

The same year, County and RSA entered into an MOU covering their relationship through 2007. The 2005-2007 MOU did not include a provision concerning overnight retention of County-owned vehicles by RSA employees.

In 2008, the parties executed a new three-year MOU. It also did not mention the overnight vehicle retention policy.

But both MOUs included clauses on waiver of bargaining and grievance procedures. Article III of each MOU declared: "The parties acknowledge that during the negotiations which preceded this Memorandum, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law as a subject open to the meet and confer process and that the full and complete agreement and understanding arrived at by the parties after the exercise of that right and opportunity, is set forth in this Memorandum. Except as modified herein, or as otherwise required, by law, existing wages, hours and other terms and conditions of employment set forth in the County Salary Ordinance and related resolutions and regulations shall continue in effect. Terms used in this Memorandum shall have the same meaning as like terms used in the County Salary Ordinance and related resolutions and regulations. Both parties, for the life of this Memorandum, each voluntarily and unqualifiedly waive the right and each agree the other shall not be obligated to meet and confer with respect to any subject or matter not specifically referred to or covered in this Memorandum, even though such subjects or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated and signed this Memorandum."

Article XI of each MOU dealt with the grievance process. These clauses generally covered disputes over the terms and conditions of employment, but expressly excluded from the process issues "the solutions of which would require the exercise of

4

legislative power, such as the adoption or amendment of an Ordinance, rule, regulation, or policy established by the Board."

In 2009, due to a reduction in revenues, the Board considered proposals to reduce County expenditures. A report submitted in March recommended again revising Policy D-10, noting that nearly 1000 "county vehicles are assigned to employees for overnight retention, a substantial enough number to indicate the potential for savings."

An internal audit issued in July found Policy D-10's 2003 revision "was not enforced to the letter and spirit resulting in more take-home vehicles being authorized than necessary." The audit stated "[o]ne of every five vehicles the county owns is designated as a take-home vehicle" and that a department "granted take-home vehicle authorizations for 26 employees . . . had zero emergency calls in the preceding 12-month period." In addition, "88 other employees" who were "provided take-home vehicles . . . responded to fewer than 12 calls in the preceding year."

The Board again revised Policy D-10. Under the 2009 revision, each County department head was required to annually submit written requests for both (1) the overnight retention of vehicles "consistent with the maximum number of off-duty emergency responses received during any consecutive 24-hour period during the last fiscal year," and (2) the employees qualified for overnight retention of a vehicle based on certain criteria, including "job duties that regularly require an off-duty emergency response to an event where there is imminent danger to life, health, or property." In addition to the reasons expressed in the 2003, the 2009 revision emphasized that "county employees are responsible for arranging their own transportation to their regular assigned job sites" "[a]s a condition of employment."

Plaintiffs responded by invoking the 2008-2011 MOU's grievance procedure. The process ultimately led to an arbitration hearing on whether the Board's 2009 decision to "unilaterally tak[e] away the take home County vehicles from . . . District Attorney investigator[s]" "violate[d] the 2008-2011 Law Enforcement

5

Unit [MOU]]." At the hearing, the parties stipulated that for 20 years the investigators had been provided with County-owned vehicles and was allowed to use them to drive to and from work.

The arbitrator issued a ruling in plaintiffs' favor. He concluded that, while the MOU did not expressly mention the overnight vehicle retention policy, it was ambiguous, citing Article III's second sentence, which stated in part, the "existing . . . terms and conditions of employment . . . shall continue in effect." Based on this purported ambiguity, the arbitrator concluded parol evidence of the parties' past practices was admissible and found it supported a conclusion the prior arrangement whereby the district attorney's office had allowed its investigators to use County-owned vehicles as transportation to and from work was "an implied and binding provision of the MOU."

County appealed the arbitrator's ruling to the Board in compliance with the MOU's grievance procedure. After a hearing, the Board issued a written decision granting the appeal and rejecting the arbitrator's ruling.

In addition to citing the contractual provisions mentioned above, the Board's decision contained the following relevant findings: (1) Policy D-10 was not the result of any negotiation or agreement "between the County and any County employee union or association"; (2) under that policy, County departments annually requested "authorization for various employee classifications to retain County-owned vehicles overnight at home"; (3) the Board's 2003 and 2009 revisions of Policy D-10 "expressly reserved the County's right to establish the limited circumstances for authorizing overnight retention of County vehicles"; (4) the 2005 settlement involved only "overnight retention of County-owned vehicles for Bomb Squad Unit Officers and K-9 Officers"; and (5) "[s]ometime between 2007 and 2010, the former District Attorney posted a[n unauthorized] flyer for" an investigator position that "identified take-home vehicles as a

6

perk of the position," but "[t]here was no evidence" anyone was hired as a result of this job notice.

Based on its findings, the Board concluded Policy D-10 was neither a "negotiated" nor a "grievable" matter, and its "unilateral revisions to . . . Policy D-10 did not breach . . . the 2008-2011 . . . MOU." Further, because of the County's "exclusive right . . . to manage and direct its own funds," the MOU's waiver of bargaining clause and the absence of any "vague or ambiguous term" in it, plaintiffs' reliance on a "'past practice'" allowing overnight retention of County-owned vehicles lacked merit. Finally, since the 2005 settlement concerned solely members of the bomb squad and officers in the canine unit and had been "superseded by the 2008-2011 MOU," it was not binding on the County.

Having exhausted their administrative remedies, plaintiffs filed this action. The trial court upheld the Board's ruling and denied plaintiffs' petition.

DISCUSSION

1. *Standard of Review*

The case involves an application of the MMBA. Generally, complaints asserting a violation of the MMBA fall within the jurisdiction of the Public Employment Relations Board. (Gov. Code, § 3509, subd. (b).) But actions by peace officers, which includes district attorney investigators (Pen. Code, § 830.1, subd. (a)), are exempt from this requirement. (Gov. Code, § 3511; *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1026.)

RSA claims County failed to meet and confer with it before unilaterally modifying the overnight vehicle retention policy. County disagrees, arguing the Board had created and revised Policy D-10, the policy was never an expressly negotiated term

of a MOU, and additionally the language contained in Article III of its MOU with the law enforcement unit excluded the policy from the meet and confer requirement.

In addition, the parties disagree on whether this action involves ordinary as opposed to administrative mandamus. Plaintiffs' petition sought relief under Code of Civil Procedure section 1085, subdivision (a), which authorizes the issuance of a writ of mandate "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (*Riverside Sheriff's Assn. v. County of Riverside* (2003) 106 Cal.App.4th 1285, 1289 ["a petitioner must show that there is no other plain, speedy and adequate remedy, that the respondent has failed to perform an act despite a clear, present and ministerial duty to do so, and that the petitioner has a clear, present and beneficial right to that performance"].) They assert a traditional writ is appropriate because the case concerns whether County breached one or more public sector labor agreements, and under the MMBA, "compliance with those agreements is not discretionary." (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 343-345.) County argues the Board's ruling concerned a discretionary employment decision and thus we should review the trial court's ruling for "prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).)

We need not determine whether this case concerns traditional or administrative mandamus. The trial court made no factual findings and the resolution of this case primarily concerns an interpretation of the parties' MOU and their 2005 settlement agreement. (*Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara, supra,* 224 Cal.App.4th at p. 1027.) Thus, we conclude this appeal largely presents questions of law that we review independent of the trial court's decision.

8

*2. The Merits*

Plaintiffs contend the unilateral change of Policy D-10 violated the MMBA for three reasons. First, they claim Article III of the 2008-2011 MOU "protects past practices that rise to the level of an implied term," including the district attorney's 20-year arrangement allowing its investigators to keep County-owned vehicles overnight. Second, they assert the revision "breached [the 2005] Agreement with the RSA [because the settlement] contains an explicit 'meet and confer' requirement which became a past practice and implied term of the MOU." Third, plaintiffs argue the arrangement in the district attorney's office became an implied term or condition of employment and was thus subject to the MMBA's meet and confer requirement. We reject all three points.

*2.1 The Scope of the MOU*

Government Code section 3505 declares, "The governing body of a public agency . . . shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of . . . recognized employee organizations, . . . and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action." Plaintiffs rely on the MOU's Article III to support a conclusion the district attorney's arrangement with its investigators constituted a term or condition of employment subject to the MMBA's meet and confer requirement.

This analysis lacks merit because it conflicts with the basic principles of contract interpretation. Under those rules, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible" (Civ. Code, § 1639), and "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity" (Civ. Code, § 1638). These principles apply in this context. "Once a local government approves an MOU, it becomes a binding and enforceable contract that neither side may change unilaterally"

9

(*City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1092-1093) and, just as with private agreements, public contracts "are to be interpreted by the same rules unless otherwise provided by the Civil Code" (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1179).

Plaintiffs' arguments ignores the very terms of Article III. It contains four sentences. The first states the MOU constitutes the parties' "full and complete agreement and understanding," which they reached "after the exercise of" their right to "make . . . proposals with respect to any subject or matter not removed by law as a subject open to the meet and confer process." Both parties agree the MOU does not expressly cover employees' overnight retention of County-owned vehicles, and it is undisputed there was no legal impediment to the parties negotiating about this practice. In effect, this sentence declares the parties' MOU constitutes an integrated agreement. (Code Civ. Proc., § 1856, subd. (a) ["Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement"].)

The second sentence in Article III limits the scope of "wages, hours and other terms and conditions of employment" to what is "*set forth in*" five sources; the MOU itself, any term required by law, the County Salary Ordinance, and that Ordinance's related resolutions and regulations. (Italics added.) The Article's third sentence reinforces the second sentence by declaring the MOU's terms shall be interpreted in conformity with "the County Salary Ordinance and [its] related resolutions and regulations." Negotiation of the right of employees to retain County-owned vehicles overnight is not required by any law or the County Salary Ordinance.

Plaintiffs assert Policy D-10 constitutes a related regulation as mentioned in the second and third sentences. The 2004 County Salary Ordinance undermines their argument. It expressly states "County[-owned] vehicles shall be used only for the

10

purpose of County business and not for personal business or pleasure of any person whatsoever." But even assuming Policy D-10 is deemed a related rule or regulation, that policy, at least since 2003, has limited the employees and the types of vehicles that can be retained overnight. Plaintiffs make no claim the district attorney's investigators fall within the restrictions imposed by either the 2003 or the 2009 policy revisions.

Finally, in direct contradiction of plaintiffs' argument, Article III's last sentence expressly waives each party's right "to meet and confer with respect to any subject or matter *not specifically referred to or covered in this Memorandum*." (Italics added.) The record reflects the issue of whether RSA employees, including district attorney investigators, could use County-owned vehicles to drive to and from work had been a matter within the parties' "knowledge or contemplation" for at least five years before the 2008-2011 MOU's ratification. The lack of any reference to this issue along with the express exclusion of any "policy established by the Board of Supervisors" as a subject covered by the MOU's grievance process reflects the parties' meet and confer obligation did not cover overnight retention of county-owned vehicles by employees.

Furthermore, "[t]he whole of a contract [must] . . . be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) Article XI of the MOU, which governs the grievance process, expressly declares "[a] grievance does NOT include . . . [¶] . . . [¶] . . . [m]atters for which the solutions . . . would require the exercise of legislative power, such as the adoption or amendment of an Ordinance, rule, regulation, or policy established by the Board of Supervisors." Here, Policy D-10 was a policy unilaterally established by the Board.

Plaintiffs cite decisions by the Public Employees Relations Board to support the argument that authorizing employees' use of employer-owned vehicles to commute to and from work can be a term or condition of employment subject to mandatory bargaining under the MMBA. (See *Los Angeles Unified School District*

11

(2002) PERB Dec. No. 1501 [27 PERC ¶ 34003, pp. 6-9].)  But "contract terms implied from default statutory provisions may be excluded from public employees' employment contracts by agreement."  (*City of San Diego v. Haas* (2012) 207 Cal.App.4th 472, 488.) Merely because the parties could have included such a provision in an MOU does not mean defendants were obligated to meet and confer with RSA before revising a unilaterally created Board policy on the overnight retention of County-owned vehicles. By failing to mention the policy in the MOU and also declaring the terms set forth in it constituted their "full and complete agreement and understanding," the parties effectively excluded any implied term relating to the subject.

### 2.2  The 2005 Settlement Agreement

The 2005 settlement agreement's recitals referred to RSA's grievance filed under the then-prevailing MOU and a writ petition seeking judicial review of the earlier controversy.  Thereafter, it provided RSA would dismiss both the grievance and petition in return for the County's agreement to allow on-call bomb squad members and officers "working with their canines" to take home their department-issued vehicles and its promise "not to make any changes in working conditions within the scope of representation, as defined under Government Code Section 3505, et seq., including any vehicle or transportation policies that fall within said scope of representation, prior to meeting and conferring in good faith with RSA."

Plaintiffs now claim the settlement "operates as an open-ended contract until changed or renegotiated by the parties," and since "there is no expiration date" mentioned in the settlement, it "became part of the MOU," thereby "preclud[ing] any change to those terms during the life of the MOU."  Again, we disagree with plaintiffs' analysis.

As with the MOU, "the interpretation of a settlement agreement is governed by the same principles applicable to any other contractual agreement."  (*Winet v. Price*

(1992) 4 Cal.App.4th 1159, 1165.) Thus, we must look to the language of the settlement. (Civ. Code, § 1638.) In addition, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, § 1647.) And, "[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, § 1648.)

The settlement was clearly intended to resolve the dispute over the Board's 2003 revision of Policy D-10. It did so, primarily by authorizing overnight retention of County-owned vehicles for only on-call bomb squad members and canine officers working with their canines. While the settlement also contained a promise the County would not change "any vehicle or transportation policies" without complying with the MMBA's meet and confer obligation, it did not retract the 2003 revision of Policy D-10. Thus, that policy remained in effect even after the settlement was executed.

Further, the settlement expressly provided it could be modified, waived, or changed by a subsequent written agreement. That occurred when the parties negotiated and signed the subsequent MOUs. As previously discussed, Article III of the MOUs stated that, "[e]xcept as modified," the "existing . . . terms and conditions of employment" contained in the specified documents, which included the rules and regulations related to the County Salary Ordinance, "shall continue in effect." This article also expressly declared each party "voluntarily and unqualifiedly waive[d] the . . . obligat[ion] to meet and confer with respect to any subject or matter not specifically referred to or covered by this Memorandum."

Consequently, plaintiffs' claim that the broad language of the 2005 settlement perpetually limited the Board's authority to unilaterally change its policy on the overnight retention of County-owned vehicles by RSA employees lacks merit.

13

*2.3 The Past Practice Issue*

Finally, plaintiffs cite the undisputed fact the district attorney investigators were provided with County-owned vehicles to drive to and from work for 20 years before the 2009 revision of Policy D-10 and argue that, even though "the words 'take home vehicles' are not expressly stated anywhere in the MOU, the parties' past practice establishes the right to take-home vehicles as if those words were written." Again, we disagree.

"Even when a written contract exists, ""[e]vidence derived from experience and practice can . . . trigger the incorporation of additional, implied terms."" [Citation.] 'Implied contractual terms "ordinarily stand on equal footing with express terms'" [citation], provided that, 'as a general matter, implied terms should never be read to vary express terms.'" (*Retired Employees Assn. of Orange County, Inc. v. County of Orange, supra,* 52 Cal.4th at pp. 1178-1179.) But under the MMBA, "'to be binding a past practice: [¶] . . . must be (1) unequivocal; (2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties.'" (*Riverside Sheriff's Assn. v. County of Riverside, supra,* 106 Cal.App.4th at p. 1291.) The burden of establishing the existence of a past practice is on the plaintiff. (*Ibid.*)

As the foregoing definition indicates, the mere fact the district attorney's office, contrary to express Board policy, allowed its investigators to use County-owned vehicles to drive to and from work for many years is not alone sufficient to establish this constituted an enforceable past practice. The arrangement was not unequivocal or clearly enunciated. In fact, Policy D-10 contradicted it. Nor was the arrangement accepted by both parties. Plaintiffs have shown nothing more than lax enforcement of the announced policy in one county department. This evidence "does not establish that such a practice was unequivocal, regular and consistent, clearly enunciated or readily ascertainable over

14

a reasonable period of time." (*Riverside Sheriff's Assn. v. County of Riverside, supra,* 106 Cal.App.4th at p. 1292.)

The record thus supports the Board's rejection of the arbitrator's past practice determination.

## DISPOSITION

Appellants' request to submit additional briefing is denied. The judgment is affirmed. Respondents shall recover their costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.